**Glendale MORE, Jr., Appellee,**

v.

**Harold FARRIER; Paul Grossheim; Crispus Nix; John Henry; Paul Hedgepeth; Jim Helling; John Emmitt; Ken Wittry; Michael Anderson; Steve Davis; Glen Jones; Steve Young; Salace Gerdes; Roger Lawson; George Fenn; and Tom Mannsheim, Appellants.**

**Michael E. Burrows; John Coburn, Appellees.**

No. 92–1468.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 12, 1992.

Decided Jan. 27, 1993.

Rehearing Denied Feb. 24, 1993.

Layne M. Lindebak, Asst. Atty. Gen., Des Moines, IA, argued, for appellants.

George S. Eichhorn, Des Moines, IA, argued (Mark S. Pennington, on the brief), for appellees.

Before FAGG, BEAM, and HANSEN, Circuit Judges.

BEAM, Circuit Judge.

Glendale More, Jr., an Iowa State Penitentiary ("ISP") inmate who regularly uses a wheelchair, brought this 42 U.S.C. § 1983 civil rights action on behalf of himself and two other wheelchair-bound ISP inmates [1] (collectively "appellees") to settle their rights and privileges at ISP. The only issue on appeal is whether the named Iowa prison officials violated appellees' rights to equal protection under the Fourteenth Amendment by refusing to install cable television service in their individual cells.[2] The district court referred this issue to a magistrate judge who decided, based on stipulated facts, that appellees failed to prove a constitutional violation. On a de novo review of the record the district court rejected the magistrate judge's recommendation, found an equal protection violation, and issued injunctive and declaratory relief. We reverse.

## I. BACKGROUND

The stipulated facts indicate that prior to December 1987, appellees were incarcerated in Cellhouse 217, the only cellhouse in the ISP system that could accommodate wheelchair-bound inmates. While they were housed at Cellhouse 217, appellees, like all other inmates in good standing, were permitted to purchase television sets from approved distributors and were provided with cable television service in their individual cells.

Cellhouse 217 was subsequently closed by court order and all prisoners were relocated. Because of their physical disabilities, on December 17, 1987, ISP moved appellees to an area of the infirmary known as the Special Needs Unit. Unlike all other cells at ISP, the cells in the Special Needs Unit are not equipped with cable television service and the prison has refused to install cable service in the individual Special Needs Unit cells. Cable service is necessary for adequate television reception at ISP.

Pursuant to the consent order, ISP provides appellees access to two cable televisions in the community room between 7:00 a.m. and 10:00 p.m. daily. Appellees report problems with viewing television in the community room, however, including disagreements over program selection, noise,[3] second-hand smoke from other inmates, and the inability to take college credit classes on educational television if they choose to do so.

Counsel for the prison stated at the settlement conference that the cost of running cable into appellees' cells was not the main reason for denying in-cell cable service. The prison officials proffered two other reasons for denying access to in-cell cable television in the Special Needs Unit. The

---

1. The separate complaints filed by Glendale More, Jr., Michael E. Burrows, and John Coburn were consolidated into a single action below.

2. The district court settled all other issues in the case with a consent order that required, among other things, physical modifications to architectural barriers, assisted access to portions of the prison, access to certain prison programs and privileges, and additional privileges that differ from the privileges afforded to inmates in the

general population. *More v. Farrier*, No. 87–501–B Consent Order (S.D.Iowa Dec. 21, 1990). The consent order reserved the in-cell cable television issue for resolution by the court.

3. According to the prison officials, the community room televisions have been equipped with head phones to screen out noise in accordance with an oral agreement between the parties. Affidavits of Crispus C. Nix, App. at 60.

district court rejected those reasons as not rationally related to the legitimate interests of the institution, and held that the prison officials violated appellees' equal protection rights by failing to provide them with in-cell cable television service.

## II. DISCUSSION

Because the parties stipulated the facts below, there are no factual issues on appeal. We conduct a de novo review of the district court's application of the law to the facts. *Mangels v. United States*, 828 F.2d 1324, 1326 (8th Cir.1987). Despite television's importance in modern society, appellees have no fundamental right to in-cell cable television, and wheelchair-bound inmates are not a suspect class. *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 441–43, 105 S.Ct. 3249, 3255–56, 87 L.Ed.2d 313 (1985). Accordingly, we review appellees' equal protection claim under a rational basis standard.[4] Under this standard appellees prevail if (1) they are similarly situated with persons who are treated differently by ISP, and (2) ISP has no rational basis for the dissimilar treatment. *Moreland v. United States*, 968 F.2d 655, 660 (8th Cir.) (en banc), *cert. denied*, — U.S. —, 113 S.Ct. 675, 121 L.Ed.2d 598 (1992).

The prison officials argue that appellees are not similarly situated with other inmates in good standing because wheelchair-bound inmates present unique penological challenges. To support their argument, the prison officials cite difficulties with providing appellees access to prison programs and to certain areas of the prison that are open to more ambulatory prisoners. The problems that ISP may confront in providing appellees access to the chapel, gym, job sites, or other facilities, however, are irrelevant to the determination whether appellees are similarly situated to other inmates with respect to in-cell cable television service. *See Reed v. Reed*, 404 U.S. 71, 76, 92 S.Ct. 251, 254, 30 L.Ed.2d 225 (1971) (a classification must rest upon some ground having a fair and substantial relationship to the object of the case). Appellees are as capable of watching television in their cells as any other prisoner at ISP. The prison officials would not have to provide any special assistance for appellees to watch television in their own cells rather than in the community room. Accordingly, we find that appellees are similarly situated with other prisoners who have in-cell cable service for the purposes of this case.

Under the rational basis test, even where similarly situated persons are treated differently by the state, state action is presumed constitutional and "will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). We will uphold a challenged state action so long as it bears a rational relationship to a state objective not prohibited by the Constitution. *See Stiles v. Blunt*, 912 F.2d 260, 263 (8th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1307, 113 L.Ed.2d 241 (1991). Not all government-created inequalities are forbidden by the Constitution. "The prohibition of the Equal Protection Clause goes no further than the invidious discrimination." *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955). We cannot say that ISP has crossed that line in this case.

As indicated, prior to the court-ordered closing of Cellhouse 217, ISP provided appellees with the same cable service as all other ISP prisoners. The closing of Cellhouse 217 necessitated moving appellees to the Special Needs Unit and created numerous access problems for appellees, including the deprivation of in-cell cable television. Appellees negotiated with the prison officials over most of the problems created by the closing of Cellhouse 217. The result of those negotiations is a Consent Order that mandates some physical reforms and obligates ISP to provide appellees with some privileges that are unavailable to other ISP inmates. Appellees' privileges include longer unlocked cell hours which allow appellees to watch the two cable televi-

---

**4.** Appellees argue that they are entitled to heightened scrutiny as a result of "increased federal and state concerns over the rights of handicapped individuals." Appellees' Brief at 13–14 (citing the Americans with Disabilities Act, 42 U.S.C. § 12101 and Iowa Code Chapt. 601A). These statutes do not, however, purport to alter the standard for constitutional equal protection claims.

**272**

sions provided for them in the community room.

ISP is entitled to prioritize the problems presented by the closing of Cellhouse 217 and to address those problems it judges most acute. *See id.* On this record, the prison officials may rationally decide that installing cable service in the cells of the Special Needs Unit is not worth the effort even though the cost of installation would be minimal. Although ISP has not provided appellees with in-cell cable service, the prison officials have provided appellees with substantially equivalent access to television a short distance from their cells. Thus, this case does not rise to the level of invidious discrimination proscribed by the Equal Protection Clause. Absent evidence of such discrimination, the federal courts should defer to the judgment of the prison officials. *Timm v. Gunter,* 917 F.2d 1093, 1099 (8th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2807, 115 L.Ed.2d 979 (1991).

### III. CONCLUSION

For the reasons discussed above, the decision of the district court is reversed.