**Cathy PARGO, et al., Plaintiffs,**

v.

**Mildred ELLIOTT, et al., Defendants.**

Civ. No. 4–92–CV–20781.

United States District Court,
S.D. Iowa,
Central Division.

Sept. 23, 1994.

---

C.A. Frerichs, Thomas Frerichs, Waterloo, IA and Emily Gosnell, Newton, NJ, for plaintiffs.

Kristin Ensign and Layne Lindebak, Des Moines, IA, for defendants.

## OPINION AND JUDGMENT

BREMER, United States Magistrate Judge.

Plaintiff class, inmates at the Iowa Correctional Institute for Women, brought this 42 U.S.C. § 1983 action alleging that defendants, Iowa Department of Corrections officials, violated their rights under the fourteenth amendment equal protection clause. Plaintiff class claims that certain policies, programs, practices, services, and facilities at their all-female institution are not "substantially equivalent" to or in "parity" with those at the men's state penal institutions. The parties consented to proceed before this Court pursuant to 28 U.S.C. § 636(c)(3). A trial was held in March and April 1994 in Mitchellville, Iowa. Thomas P. Frerichs and C.A. Frerichs represent the plaintiff class. Assistant Attorneys General Kristin Ensign and Layne Lindebak represent the defendants. The record was reopened from June 30 through July 1, 1994 for additional evidence on ICIW's inmate levels system. A motion for a temporary restraining order preventing implementation of a level system at ICIW was denied. Plaintiff class seeks 1) a declaratory judgment; 2) injunctive relief; and 3) attorneys' fees and costs. This case is fully submitted.

## STANDARD OF REVIEW

The fourteenth amendment equal protection clause of the United States Constitution requires the state to treat similarly situated persons in a substantially equivalent manner. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 561–562, 64 L.Ed. 989 (1920). Plaintiff class claims that defendants violated its equal protection rights. Before this Court can grant the relief plaintiffs seek it must determine: (1) whether male and female inmates incarcerated in the Iowa Correctional System are similarly situated and (2) whether defendants treat female inmates in a manner substantially equivalent to the way they treat male inmates.

## FINDINGS OF FACT

Plaintiff class consists of all women incarcerated at Iowa Correctional Institute for

Women (ICIW). The Iowa Medical Classification Center (IMCC) houses as few female inmates as possible; normally, ten or fewer female inmates reside at IMCC. IMCC only holds female inmates who have acute medical, psychiatric, or disciplinary problems or who are in extreme need of protective custody. However, most female inmates reside at ICIW. Plaintiff class compares itself to select groups of male inmates incarcerated in Iowa.

Defendants Elliott, Vander Mey, Keith, McCormick, Klingaman, Brown, and Scheisow are members of the governing board of the Iowa Department of Corrections (DOC) and are responsible for the operation and conduct of the DOC. Defendant Chandler is the chief administrative officer of the DOC. Defendant Long is the Warden and chief administrative officer of ICIW.

The DOC is exclusively responsible for the control, treatment, and rehabilitation of inmates incarcerated in all state penal institutions: Iowa Correctional Institution for Women (ICIW) in Mitchellville; Iowa State Men's Reformatory (IMR) in Anamosa; Iowa State Penitentiary (ISP) in Fort Madison; Iowa Medical and Classification Center (IMCC) in Oakdale; North Central Correctional Facility (NCCF) in Rockwell City; Mt. Pleasant Correctional Facility (MPCF) in Mount Pleasant; Clarinda Correctional Facility (CCF) in Clarinda; and Iowa Correctional Release Center (CRC) in Newton. ICIW houses female inmates who have been incarcerated as a result of being convicted in state court. IMR, ISP, NCCF, MPCF, CCF, and CRC house only male inmates incarcerated as a result of being convicted of criminal offenses in state court. None of Iowa's correctional facilities jointly house male and female inmates.

The DOC's custody classification scoring system for male and female inmates is based upon written objective standards imposed without regard to an inmate's gender. The custody scores result in placement for both male and female inmates as minimum live-out, minimum, medium, or maximum custody. None of the men's institutions have all four custody levels represented in a small population comparable to ICIW. All four custody

levels are represented at ICIW, while most of the men's institutions house inmates with predominantly the same custody score. Some of the men's institutions and ICIW have levels systems designed for behavior modification. The Iowa legislature has not defined different gender-based purposes for incarcerating prisoners. Plaintiffs have not established that gender-based discrimination motivated defendants' design or implementation of the programs and services offered at ICIW.

## CONCLUSIONS OF LAW

■ The Supreme Court recently affirmed that courts must apply the equal protection heightened scrutiny standard to determine whether a defendant has violated a plaintiff's equal protection rights based on gender. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. ——, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). The Court held that under equal protection jurisprudence, a gender-based classification requires "an exceedingly persuasive justification" in order to survive constitutional scrutiny. *Id.* at ——, 114 S.Ct. at 1425. "Our nation has had a long and unfortunate history of sex discrimination, a history which warrants the heightened scrutiny we afford all gender-based classifications today." *Id.* at ——, 114 S.Ct. at 1425. Female inmates are equally capable of participating in and benefitting from the programs and services defendants offer male inmates. *See More v. Farrier*, 984 F.2d 269, 271 (8th Cir.1993). (finding that wheelchair-bound prisoners are similarly situated to other prisoners who have in-cell cable television because "[they] are as capable of watching television in their cells as any other prisoner at [the institution].").

■ Equal protection heightened scrutiny analysis requires the government to prove that the challenged state action was substantially related to an important governmental interest. *See generally Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). However, in prisoner cases courts should apply the equal protection analysis set out in *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987) instead of traditional equal protection standards. *See Klinger v. Dep't of Corrections*, 31 F.3d 727,

732 (8th Cir.1994) (holding that the lower court incorrectly applied a heightened scrutiny standard rather than the deferential *Turner* standard where women inmates alleged gender-motivated violations of their equal protection rights).

■ Absent a showing that plaintiffs are similarly situated to male inmates incarcerated in Iowa, plaintiffs have no viable equal protection claim. *Klinger*, 31 F.3d at 730–731 (holding that female inmates in one Nebraska correctional facility are not similarly situated to male inmates in another Nebraska correctional facility for purposes of receiving prison programs and services). In *Klinger*, plaintiffs alleged that defendant provided them with programs and services inferior to those provided to male inmates housed in only one particular prison. *Id.* Plaintiffs in this case make similar allegations about defendants. Here, the plaintiff class asks the Court to compare the quality of services at ICIW to the quality of certain services defendants offer male inmates at various facilities.[1] Unlike *Klinger*, where plaintiffs used only one men's institution for comparison, the plaintiffs in this case compared programs and services offered at ICIW and various men's institutions on a program-by-program basis.

A program-to-program comparison of programs and services is not the appropriate way to analyze plaintiffs' equal protection claim. *Cf. Klinger*, 31 F.3d at 731. Applying the *Klinger* court's equal protection analysis, this Court finds that ICIW female inmates are not similarly situated to male inmates in Iowa due to ICIW's small population and the segregation of female inmates from male inmates. Thus, they have failed to state a claim.

Plaintiffs do not challenge defendants' decision to segregate them from male inmates. The Supreme Court long ago rejected the "separate but equal" doctrine for racial classifications in prisons. *See generally, Lee v. Washington*, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968) (per curiam). Considering "differences resulting from ... segregation itself ... would be comparable to justifying segregating black and white children in school because the 'inferior' educational attainments of black children, resulting from years of inferior education in segregated schools, made them unable to compete with their white peers." Rosemary Herbert, Women's Prisons: An Equal Protection Evaluation, 94 Yale L.J. 1182, 1189 n. 37 (1985); *see also Brown v. Board of Education*, 347 U.S. 483, 495, 74 S.Ct. 686, 692, 98 L.Ed. 873 (1954) ("[I]n the field of public education the doctrine of 'separate but equal' has no place.").

Plaintiffs challenge programs and services which are the result of day-to-day administrative decisions of Iowa prison officials. The Supreme Court has recognized that " '[c]ourts are ill equipped to deal with the increasingly urgent problems of prison administration.' " *Turner*, 482 U.S. at 84, 107 S.Ct. at 2259 (quoting *Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974)); *Klinger*, 31 F.3d at 732 (quoting *Turner*). Consequently, courts should accord great deference to prison authorities. *Turner*, 482 U.S. at 85, 107 S.Ct. at 2259–2260; *Klinger*, 31 F.3d at 732. Closely scrutinizing decisions of prison officials "distort[s] the decisionmaking process" and "seriously hamper[s] [their] ability to ... adopt innovative solutions to the intractable problems of prison administration." *Turner*,

1. The Complaint lists the challenged programs and services by ICIW inmate classification: 1) All ICIW inmates—classification, access to courts, annual classification review, classification screening for prison jobs, classification decisions to segregate HIV/AIDS inmates, movie censorship, access to counselors, access to canteen, long-term rehabilitation treatment, pay-rate inequity, education and training, rehabilitation/gender self-image, inmate level system inequity in level A and visitation; 2) Minimum live-out custody—minimum live-out classification disparities, housing, institutional off-grounds work, yard privileges, library access, furlough, visitation, substance abuse programs; 3) Minimum custody inmates—minimum live-out classification, work opportunities off-grounds, yard privileges, library access, access to hobby crafts, phone privileges, canteen limitations; 4) Medium custody inmates—off-grounds work, equity of level systems, yard privileges, library access, access to hobby crafts, phone privileges, canteen limitations; and 5) Maximum custody inmates—equity of level system, yard privileges, library access, access to hobby crafts, phone privileges, canteen limitations, visitation.

482 U.S. at 89, 107 S.Ct. at 2262; *Klinger,* 31 F.3d at 732 (quoting *Turner*). Under the *Turner* standard, this Court accords great deference to the prison officials' decisions. Thus, this Court will not disturb defendants' decisions absent a showing of intentional or purposeful discrimination by the State. *See Klinger,* 31 F.3d at 732 (quoting *Personnel Adm'r of Massachusetts v. Feeney,* 442 U.S. 256, 274, 99 S.Ct. 2282, 2293–2294, 60 L.Ed.2d 870 (1979)).

Although there are some clear differences in the programming at ICIW and similar programs offered at some of the men's penal institutions, plaintiffs have not established a gender discriminatory animus for the differences. It may be argued that society has traditionally short-changed women's prisons in funding and services due to stereotypical views about women's appropriate societal roles and their lack of need for certain types of vocational training. *See generally,* Nicole H. Rafter, Partial Justice: Women, Prisons and Social Control (2d ed. 1990); The American Prison: Issues in Research and Policy 89–111 (Lynne Goodstein & Doris L. MacKenzie eds., 1989). Plaintiffs have not established that the reason for the difference in programming is due to gender-based discrimination or that the differences were not rationally related to legitimate governmental interests such as budget, location, and size of ICIW's population.

Based upon *Turner* and *Klinger* this Court holds that Iowa male and female inmates are not similarly situated for the purpose of equal protection analysis; additionally, because plaintiffs have not established that gender-based discrimination motivated defendants' design or implementation of the programs and services offered at ICIW, plaintiffs' Complaint is dismissed.

IT. IS SO ORDERED.