**Lil' TEMPLE a/k/a Terrence Johnson, Plaintiff,**

v.

**John DAHM, Harold W. Clarke, Frank X. Hopkins, Dr. Whitlow, and Dr. Dunlap, Defendants.**

No. 4:CV95–3271.

United States District Court, D. Nebraska.

Sept. 14, 1995.

Lil' Temple, pro se.

## JUDGMENT

KOPF, District Judge.

Pursuant to the court's Memorandum and Order previously filed in this matter, final judgment is entered in favor of Defendants and against Plaintiff, providing that Plaintiff shall take nothing as against Defendants and Plaintiff's complaint is dismissed without prejudice.

## MEMORANDUM AND ORDER

PIESTER, United States Magistrate Judge.

Plaintiff, presently confined at the Nebraska State Penitentiary ("NSP"), has filed a civil rights complaint pursuant to 42 U.S.C. § 1983. Because plaintiff is proceeding without the assistance of counsel, his complaint is before this court for initial review pursuant to Local Rule 83.10.[1] Liberal-

---

1. Local Rule 83.10 provides for initial, *sua sponte* review of all complaints filed without the assistance of counsel pursuant to *Fed.R.Civ.P.* 12(b)(6), regardless of whether those cases are filed in forma pauperis. Additionally, in cases such as this one, where plaintiff is proceeding in forma pauperis, review is had under 28 U.S.C. § 1915(d). Local Rule 83.10 provides for initial review by a magistrate, who will (1) recommend dismissal of all frivolous claims pursuant to § 1915(d); (2) order the issuance of summons for service upon all named defendants with respect to all non-frivolous claims, with the instruction that defendants not answer or otherwise respond until ordered to do so by the court after completion of its initial review of the non-

frivolous claims; (3) grant the plaintiff leave to file an amended complaint to correct deficiencies in the non-frivolous claims; (4) recommend dismissal, in whole or in part, for failure to state a claim for relief under Rule 12(b)(6); (5) order defendants to respond to those non-frivolous claims which are not dismissed pursuant to Rule 12(b)(6). In the event leave to amend is granted, the magistrate will identify the deficiencies in the complaint and indicate what factual allegations are necessary to cure those deficiencies. Should dismissal be recommended, the plaintiff is given notice of his right to object and an opportunity to object on legal or factual grounds. *See Neitzke v. Williams*, 490 U.S. 319, 329–30 & n. 8, 109 S.Ct.

ly construing the allegations of the complaint, *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), I conclude that plaintiff has failed to allege facts sufficient to establish that his claims are non-frivolous. 28 U.S.C. § 1915(d). I shall therefore grant plaintiff leave to file an amended complaint.

## ALLEGATIONS

According to the allegations of the complaint in July 1991 plaintiff was arrested on murder and weapons charges and was incarcerated in the Douglas County Jail. Plaintiff was sixteen years old at the time and had been receiving mental health treatment. During plaintiff's incarceration in the county jail, a physician examined him and determined that he should be tried "as an adult." Plaintiff was subsequently tried, found guilty, and sentenced to 5 to 10 years in prison. At the time of his conviction, plaintiff's age was seventeen.

Following his conviction plaintiff was confined at the Diagnostic and Evaluation Center where he was "evaluated to be placed in the Lincoln Correctional Center" ("LCC"). In June or July of 1992 plaintiff was "released to the general population" apparently at LCC. Subsequently, as a result of "rules violations," plaintiff was transferred to the LCC "adjustment center." While incarcerated there, plaintiff was prescribed medication to control his behavior by Defendant Whitlow.[2]

On September 13, 1993 plaintiff was transferred to the NSP control unit. Plaintiff alleges that the control unit is where "the most dangerous prisoners" are housed. Plaintiff was eighteen years old at the time of the transfer and was receiving medication and psychiatric treatment from Defendant Dunlap. Plaintiff challenges the transfer to the control unit. Specifically, he alleges that the transfer constituted a due process and double jeopardy violation in light of his age, mental health problems, and lack of educational training.

Plaintiff further challenges certain restrictions placed on him during his confinement in the control unit. Specifically, plaintiff alleges that he is not allowed to watch television or to obtain educational aid from a tutor. Plaintiff seeks declaratory, injunctive, and monetary relief.

## DISCUSSION

I liberally construe plaintiff's complaint as raising the following claims: (1) Due Process (a) transfer, (b) television, and (c) tutor; and (2) Double Jeopardy. Plaintiff's claims are considered below following a discussion on proper defendants.

### PROPER DEFENDANTS

■ "Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir.1990). Before liability may be imposed under section 1983, plaintiff must show each defendant either did some affirmative act, participated in the affirmative act of another, or failed to perform an act which resulted in the deprivation of plaintiff's federally protected rights. *See Stevenson v. Koskey*, 877 F.2d 1435 (9th Cir.1989).

■ Plaintiff is required to present specific allegations of fact as to either direct personal involvement, direction of others, or a knowing failure to train, supervise, or act, which resulted in plaintiffs' injuries. Liability under section 1983 may not be grounded upon a *respondeat superior* theory. *Wilson v. City of North Little Rock*, 801 F.2d 316, 322–23 (8th Cir.1986); *Hahn v. McLey*, 737

---

1827, 1834 n. 8, 104 L.Ed.2d 338 (1989) (identifying differences between procedures under *Fed. R.Civ.P.* 12(b)(6) and 28 U.S.C. § 1915(d) and leaving open question of propriety of *sua sponte* dismissals under former provision). *See also Haugen v. Sutherlin*, 804 F.2d 490, 491 n. 2 (8th Cir.1986) (Lay, C.J.) (authorizing initial review of pleadings to avoid "Sisyphean task of serving invalid summonses on the multitude of defendants"); *Martin–Trigona v. Stewart*, 691 F.2d

856, 858 (8th Cir.1982) (authorizing *sua sponte* review under Rule 12(b)(6)).

2. Also while at the adjustment center plaintiff claims to have been "sentenced to 20 months to 5 years, 1-year, and an additional 1-year." Plaintiff fails to indicate what he was sentenced for or by whom he was sentenced.

F.2d 771 (8th Cir.1984). That is, one cannot be held liable for another's act simply because he or she has supervisory authority over one who deprived plaintiff of a constitutional right.

■ Plaintiff fails to identify how any of the named defendants were personally involved in the alleged violations of plaintiff's constitutional rights. As such, I am unable to conclude that plaintiff's claims are non-frivolous. 28 U.S.C. § 1915(d). I shall grant plaintiff leave to file an amended complaint in which to allege facts, if they exist, indicating how each defendant was personally involved in the actions which caused a violation of plaintiff's constitutional rights. In the absence of such allegations, this matter will be subject to dismissal.

### (1) DUE PROCESS

■ The procedural component of the Due Process Clause sets certain limits on government legislation that deprives an individual of life, liberty or property. It does so by: 1) recognizing certain property and liberty interests; 2) requiring that those interests receive certain procedural protections before they are infringed. *Cf. Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548

(1972). Such a protected interest may arise from two sources: 1) the Constitution itself; and 2) state law.[3] *See Paul v. Davis,* 424 U.S. 693, 710–11, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976).

■ In the context of lawfully incarcerated inmates, the procedural due process protections arising from the Constitution itself are minimal.[4] Accordingly, the question of whether an inmate is entitled to protection under the Due Process Clause usually requires a determination of whether state law has created a protected liberty interest. Prior to the Supreme Court's recent decision in *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the determination of whether state law created a protected liberty interest required a close examination of the language of the state statute or regulation itself. *See Kentucky Dep't of Corrections v. Thompson,* 490 U.S. 454, 461, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989).[5] The Court in *Sandin,* however, abandoned that approach[6] and articulated a new standard for determining whether a protected liberty interest arises from state law. Under the new standard a liberty interest will arise only where the deprivation at issue "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

---

**3.** The analysis employed in determining whether a protected interest has been created by state law has been altered recently by the Supreme Court. *See infra* discussion regarding *Sandin v. Conner,* —— U.S. ——, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

**4.** *See* The Supreme Court, 1982 Term, 97 Harv. L.Rev. 70, 108 (1983) (arguing that the Supreme Court has "define[d] prisoners' core liberty interests so narrowly that they are rarely, if ever, to be found."); see, e.g., *Olim v. Wakinekona,* 461 U.S. 238, 244–45, 103 S.Ct. 1741, 1744–45, 75 L.Ed.2d 813 (1983); *Hewitt v. Helms,* 459 U.S. 460, 467–68, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983); *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2103–04, 60 L.Ed.2d 668 (1979); *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976); *Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974).

This view stems from the argument that once an individual has been lawfully convicted and incarcerated, he "retain[s] only a narrow range of protected liberty interests.... [Such] withdrawal [and] limitation of many privileges and

rights, [is seen as] a retraction justified by the considerations underlying our penal system." *Hewitt,* 459 U.S. at 467, 103 S.Ct. at 869.

**5.** A liberty interest was created where the law or regulation contained: 1) "substantive predicates" providing "particularized standards or criteria [to] guide the State's decisionmakers"; and 2) mandatory language "mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Thompson,* 490 U.S. 454, 461–62, 109 S.Ct. 1904, 1909 (citing *Olim,* 461 U.S. at 249, 103 S.Ct. at 1747–48; *Hewitt v. Helms,* 459 U.S. at 471–72, 103 S.Ct. at 871–72).

**6.** The Court reasoned that the former approach created a disincentive to the codification of prison guidelines and led to excessive judicial involvement in the "day-to-day management" of prisons. *Sandin,* —— U.S. at ——, 115 S.Ct. at 2298. The Court also noted that the former approach "encouraged prisoners to comb regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Id.*

prison life." *Sandin*, — U.S. —, 115 S.Ct. at 2300.[7]

### (a) Transfer

 The Constitution itself provides no due process protection for an intrastate transfer of a prisoner from one institution to another. *See Meachum v. Fano*, 427 U.S. 215, 228, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466. However, as noted above, a liberty interest worthy of due process protection may be created by state law where the deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, — U.S. at —, 115 S.Ct. at 2300. Thus, if the transfer of plaintiff to the NSP control unit was both "atypical" and "significant," plaintiff was entitled to due process protections in connection with the transfer. Application of the foregoing standard is beyond the scope of this initial review and will require the development of at least a written record.[8] However, as noted above, plaintiff has failed to allege sufficient person-

al involvement by any of the named defendants. In the event plaintiff alleges such involvement in his amended complaint, I shall order a response from the defendants on this claim.

### (b) Television

 Plaintiff has no right to view television as arising from the Constitution. *See Gladson v. Rice*, 862 F.2d 711, 713 (8th Cir. 1988) (inmates have no constitutional right to watch television or listen to a radio). However, as noted above, a liberty interest worthy of due process protection may be created by state law where the deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, — U.S. at —, 115 S.Ct. at 2300. Thus, if the television deprivation was both "atypical" and "significant" plaintiff was entitled to due process protection. Application of the foregoing standard is beyond the scope of this initial review and will require the development of a written record.[9] However, as noted above, plaintiff

7. In applying the new standard the Court found that placement of the plaintiff in disciplinary segregation did not trigger due process protection. *Sandin*, — U.S. at —, 115 S.Ct. at 2295. The Court reasoned that no liberty interest existed in that case because the conditions of disciplinary segregation "mirrored" those of administrative segregation and protective custody, both of which could be imposed at the discretion of prison officials. *Id.* The Court also noted that the misconduct charge against the prisoner had since been expunged from his record. *Id.* Thus, the Court concluded that placing the prisoner in disciplinary segregation "did not work a major disruption in his environment" and thus "was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at —— n. 11, 115 S.Ct. at 2302 n. 11.

8. I note that under the *Sandin* standard, at least a written record virtually always will be necessary to determine whether a liberty interest exists. Without such a record, and without any case law further shaping the contours of the standard, the court has no guidance as to which deprivations are "atypical" and/or "significant," nor how to apply that standard. For example, is the comparison to be made to other units in the same prison, other prisons, or some evolving national standard? Is the inquiry subjective or objective? Does the standard differ as between classifications of prisoners or sentences?

The practical result of *Sandin*, then, is that fewer seemingly frivolous prisoner lawsuits will be summarily dismissed by the court. By contrast, under the old approach, where a prisoner was unable to produce any state law or regulation arguably creating in him a liberty interest, as was most often the case, the court was justified in summarily dismissing the lawsuit. Thus, one of the apparent purposes behind the majority opinion in *Sandin*—the reduction (or prompt dismissal) of frivolous prisoner litigation—may not be realized. In effect, a prisoner seeking serious judicial consideration of his claim has been spared the burden of "comb[ing] regulations in search of mandatory language on which to base entitlements to state-conferred privileges." *Sandin*, — U.S. at —, 115 S.Ct. at 2295, 2299. He need only allege facts arguably showing that an "atypical" and "significant" deprivation has occurred, whatever those adjectives may mean in the context of his particular circumstances. The court is then obliged to determine whether, under the *Sandin* test, that deprivation is worthy of due process protection. Such an inquiry will necessarily be quite fact-specific and probably labile as well.

9. At first blush, it may appear that denying an inmate television cannot constitute an "atypical" or "significant" deprivation, especially in light of *Sandin*, where the majority held a seemingly more serious deprivation—placement in disciplinary segregation—not to be "atypical" and

has failed to allege sufficient personal involvement by any of the named defendants. In the event plaintiff alleges such involvement in his amended complaint, I shall order a response from the defendants on this claim.

### (c) Tutor

■ Plaintiff has no constitutional right to be rehabilitated by means of an educational tutor. *See Woodley v. Department of Corrections,* 934 F.2d 321, 321 (4th Cir.1991) (citing *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 279 n. 9, 50 L.Ed.2d 236 (1976); *Hoptowit v. Ray,* 682 F.2d 1237, 1254–55 (9th Cir.1982); *Newman v. Alabama,* 559 F.2d 283, 287 (5th Cir.1977), *rev'd on other grounds, sub nom., Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Battle v. Anderson,* 564 F.2d 388, 403 (10th Cir.1977)). However, as noted above, a liberty interest worthy of due process protection may be created by state law where the deprivation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300. Thus, if deprivation of an educational tutor was both "atypical" and "significant," plaintiff was entitled to due process protection. Application of the foregoing standard is beyond the scope of this initial review and will require the development of a written record. However, as noted above, plaintiff has failed to allege sufficient personal involvement by any of the named defendants. In the event plaintiff alleges such involvement in his amended complaint, I shall order a response from the defendants on this claim.

### (2) DOUBLE JEOPARDY

■ Plaintiff alleges that "the move to the Nebraska State Penitentiary constituted a double jeopardy." The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const.

amend. V. As the Supreme Court has explained on numerous occasions, the Double Jeopardy Clause affords a defendant three basic protections:

> [I]t protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) (footnotes omitted).

As plaintiff fails to clearly allege a violation of any of the foregoing protections, it appears that his double jeopardy claim is frivolous. 28 U.S.C. § 1915(d). However, before recommending dismissal, I shall afford plaintiff an opportunity to clarify this claim in his amended complaint. Failure to do so will subject the claim to dismissal.

### REQUEST FOR APPOINTED COUNSEL

Plaintiff has requested that the court appoint counsel to represent him in this matter. The Eighth Circuit Court of Appeals has held that when determining whether counsel should be appointed for an indigent civil rights plaintiff, the court should assess the need for counsel, including consideration of such factors as (1) the factual complexity of the case, (2) the ability of the plaintiff to investigate the facts, (3) the existence of conflicting testimony, (4) the plaintiff's ability to present his claims and (5) the complexity of the legal issues. *In re Lane,* 801 F.2d 1040, 1043–44 (8th Cir.1986); *Johnson v. Williams,* 788 F.2d 1319, 1322–23 (8th Cir. 1986). In this matter, because of the deficiencies discussed above, consideration of plaintiff's request will be deferred until the undersigned has completed his initial review of plaintiff's claims pursuant to Local Rule 83.10.

---

"significant." However, the Court in *Sandin* reached its conclusion only after reviewing the written record with respect to the "ordinary incidents of prison life." *Sandin,* —— U.S. at ——, 115 S.Ct. at 2300. Specifically, the court based its conclusion on a "comparison between inmates inside and outside disciplinary segrega-

tion." *Id.* Thus, while the deprivation of television may very well be "within the range of confinement to be normally expected" for an inmate in the NSP control unit, *see id.* at ——, 115 S.Ct. at 2302, I am unable to so conclude without the development of a factual record.

**IT THEREFORE HEREBY IS OR-
DERED:**

1. Plaintiff's motion for appointment of counsel is deferred for ruling until the undersigned has completed the initial review of plaintiff's claims pursuant to Local Rule 83.10.

2. Plaintiff is given until Sept. 5, 1995 to file an amended complaint which states a claim in accordance with the terms of this memorandum, in the absence of which this matter will be subject to dismissal.