**Rodney MANLEY, et al.**

v.

**Kirk FORDICE, et al.**

**Nos. 3:95–cv–23, 3:95–cv–116 and 3:95–cv–283.**

United States District Court, S.D. Mississippi, Jackson Division.

Oct. 16, 1996.

Rodney Manley, Parchman, MS, pro se.

Rickey Dale Meshell, Parchman, MS, pro se.

Casey T. Havard, Parchman, MS, pro se.

Jason King, Parchman, MS, pro se.

Mike Winstead, Parchman, MS, pro se.

Michael Waters, Pearl, MS, pro se.

Travis Laneer, Parchman, MS, pro se.

Sammy Brookings, Parchman, MS, pro se.

Bobby Daniel Horton, Jr., Parchman, MS, pro se.

Kenneth Williams, Parchman, MS, pro se.

John L. Clay, Office of the Attorney General, Jackson, MS, Leonard Charlton Vincent, Mississippi Department of Corrections, Parchman, MS, for Kirk Fordice, Eddie Briggs, Tim Ford, The State of Mississippi.

John L. Clay, Office of the Attorney General, Jackson, MS, for Annie Gillespie, Secretary for the Senate Correctional Committee, Steve Puckett, Commissioner consolidated defendant, Robert Armstrong, Associate Superintendent, Unit 32, Joyce Anderson, Property Room Supervisor.

## ORDER

BARBOUR, Chief Judge.

This cause is before the Court pursuant to Rule 72(b) of the Federal Rules of Civil Procedure on the Objections of the Petitioners ("Objections"), to the Report and Recommendation of the United States Magistrate Judge. In that Report and Recommendation, the Magistrate Judge recommended that Plaintiffs' claims against Defendants be dismissed with prejudice. Having considered the Plaintiffs' objections and being fully advised in the premises, the Court finds that the objections are without merit and should be denied and that the Report and Recommendation of the Magistrate Judge, entered in this cause on September 19, 1996, together with the findings of the Court below, should be accepted and adopted. Because the Plaintiffs are proceeding *pro se* without the aid of appointed counsel in filing their Complaint, the Court liberally construes their allegations.

(1) *Free Exercise of Religion Claims*

In their Objections, Plaintiffs contend that the Magistrate Judge should have applied a stricter standard of scrutiny to their religious exercise claims. Plaintiffs, in effect, have two legal bases for their religious freedom claims. First, they claim that the law violates their Free Exercise Clause rights under the First Amendment to the United States Constitution. For the reasons stated

by the Magistrate, the Court adopts the Magistrate Judge's Report and Recommendation dismissing Plaintiffs' First Amendment Free Exercise Clause claims.

■ Second, Plaintiffs claim that the law violates their rights under the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C. §§ 2000bb—2000bb–4. The RFRA mandates that the government shall not "substantially burden a person's exercise of religion" unless the government shows that the law furthers a "compelling government interest" by the "least restrictive means." 42 U.S.C. § 2000bb–1. The threshold inquiry under the RFRA is whether Plaintiff demonstrates a substantial burden on his religious practice. *American Life League, Inc. v. Reno,* 47 F.3d 642 (4th Cir. 1995). In the present case, the Plaintiffs have failed to show that the denial of television and radio substantially burdens their religious practices. As stated by the Magistrate Judge, Plaintiffs have alternative means of religious practice such as Chaplains, religious services and religious literature. Plaintiffs' claim in their Objections that one of these alternatives, access to Chaplains, is not readily available is not determinative and, further, is unsubstantiated by evidence. Thus, the Court adopts the Magistrate Judge's Report and Recommendation that Plaintiffs' religious freedom claims be dismissed with prejudice.

### (2) *Freedom of Speech Claims*

■ Plaintiffs contend that the Magistrate Judge erred in dismissing their freedom of speech claims. The First Amendment's Freedom of Speech Clause does not protect the public's right to media access. Instead, it protects speakers from unjustified government intrusion. *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 776, 106 S.Ct. 1558, 1563–64, 89 L.Ed.2d 783 (1986). Thus, the Court dismisses Plaintiffs' First Amendment freedom of speech claims.

### (3) *Eighth Amendment Claims*

■ Plaintiffs object to the Magistrate Judge's finding that the denial of television and radio privileges does not constitute cruel and unusual punishment for Eighth Amendment purposes. In their Objections, Plaintiffs contend that such denial constitutes psychological harm and allege that the suicide attempt rate has increased since the Defendants implemented the denial of television and radio privileges. Even assuming that denial of media privileges causes some psychological harm, such harm is not prohibited by the Eighth Amendment as determined by case law cited by the Magistrate Judge. Thus, the Court adopts the Magistrate Judge's Report and Recommendation on Plaintiffs' Eighth Amendment claim.

### (4) *Due Process Claims*

■ The Plaintiffs offer no colorable argument in their Objections that they have a liberty or property interest in the retention of television and radio access. Thus, the Court adopts the Magistrate Judge's Report and Recommendation in the dismissal of Plaintiffs' Due Process claims.

### (5) *Equal Protection Claims*

■ Plaintiffs contend that the Magistrate Judge erred in finding that Senate Bill Number 2005, § 28(2), passes the rational basis test. A classification judged under the rational basis standard enjoys a strong presumption of validity. *Heller v. Doe by Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993). The Magistrate Judge found that the rationale for the unequal treatment between those prisoners allowed media privileges and those denied such privileges was to increase incentives for prisoners to enter work and educational programs and to promote good behavior in order to be eligible for such programs. The Plaintiffs have offered no new arguments or evidence to overcome the presumption of validity that such a classification, as applied to the Plaintiffs before the Court, is not reasonably related to the above rationale. Thus, the Court adopts the Magistrate Judge's Report and Recommendation in the dismissal of Plaintiffs' Equal Protection claims.

IT IS THEREFORE ORDERED that the Report and Recommendation of the United States Magistrate Judge Alfred G. Nicols, Jr., entered on September 19, 1996, supple-

mented by the findings of the Court herein, is the finding of the Court, and the claims of Plaintiffs be dismissed with prejudice.

A separate judgment will be entered herein in accordance with this Order as required by Rule 58 of the Federal Rules of Civil Procedure.

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

NICOLS, United States Magistrate Judge.

This cause came before the court for an evidentiary hearing on the 22nd day of July, 1996, at the James O. Eastland Federal Building and Courthouse in Jackson, Mississippi, upon reference by Judge William H. Barbour, Jr., Chief Judge. The representative plaintiffs appeared *pro se*, and the defendants were represented by counsel, Hon. John Clay. The parties submitted Proposed Findings of Fact and Conclusions of Law according to a schedule determined at the evidentiary hearing. Jurisdiction of this case is based upon 42 U.S.C. § 1983. The undersigned United States Magistrate Judge hereby renders this report, recommending that a Final Judgment on behalf of the defendants be entered.

The plaintiffs and/or their representatives and witnesses who appeared and testified at the hearing were James Lee Tolbert, Jr.; Ricky Dale Meshell; Rodney Wayne Manley; Larry Shelton Hentz; and, Stephen Williams.[1] Testifying on behalf of the defendants were Robert Frederick Armstrong, Warden at Parchman, and John Grubbs, Mississippi Department of Corrections Deputy Commissioner.

### CLAIMS OF THE PLAINTIFFS

The plaintiffs filed these consolidated actions pursuant to 42 U.S.C. § 1983, the Civil Rights Act of 1871, and 42 U.S.C. § 2000bb, the Religious Freedom Restoration Act of 1993, seeking an injunction and declaration that § 28(2) of Senate Bill 2005, now Miss.

Code Ann. § 47–5–124 (Supp.1996), is unconstitutional. § 47–5–124 provides as follows:

(2) No convict incarcerated in a state correctional facility or a private correctional facility may be authorized or permitted to operate, use or have in his possession during the term of his incarceration any radio, television, record player, tape player, recorder, compact disc player, stereo or computer, except when such devices are used in a work incentive program or Regimented Inmate Discipline Program authorized and administered by the Department of Corrections. The department shall develop and implement a plan to return such devices owned by inmates to the families of such inmates.

The plaintiffs charge that they are dependent upon radios and televisions for recreational, educational, religious, and news mediums, and that the defendants have provided no alternative means to these plaintiffs to fulfill these purposes. Plaintiffs assert that their rights under the First, Eighth and Fourteenth Amendments of the United States Constitution have been violated in that:

1. Defendants are denying the plaintiffs their right to access to the press and the exercise of religious freedoms.

2. Plaintiffs are being subjected to cruel and unusual punishment where defendants have forced some of the plaintiff class into complete solitude and isolation from the outside world.

3. The defendants have violated plaintiffs' due process and equal protection rights by arbitrarily imposing the statute upon them while not imposing it on others.

4. Plaintiffs' right to own and possess televisions and radios by way of a state-created liberty interest have been violated by defendants through their enforcement of Senate Bill # 2005 § 28(2).

Only the plaintiffs' witnesses Meshell, Manley, and Hentz have been deprived of the use of televisions and radios. Witnesses Tolbert and Williams are presently housed in a work unit and have television and radio privileges. The substance of the plaintiffs' and their

---

1. Plaintiffs Timothy Martin, Stephen Williams, and James Lee Tolbert have voluntarily dismissed their claims. Mr. Williams and Mr. Tolbert were allowed to participate and testify at the hearing as representatives of the remaining plaintiffs.

witnesses' testimony is that they are willing and able to work but are not allowed to; they have never refused to work. Those without these privileges are those inmates who are housed in lock-down or non-working maximum security units. Inmates who are disabled, or are non-working due to health reasons, are allowed these privileges, as are inmates in the psychiatric units. Furthermore, death row inmates are allowed television and radio privileges. These plaintiffs generally contend that the law is unfair and violates their due process rights because it is only applied to them, those who are not allowed to work but whose crimes are not necessarily violent, and is not applied to more violent offenders, such as death row inmates.

The plaintiffs also contend that some inmates utilize their radios and televisions to view religious programming, and that their religious needs are not met except through such programs. Furthermore, some inmates are illiterate and cannot utilize reading materials in lieu of radio and television mediums.

## FINDINGS OF FACT

1. The undersigned finds that the defendants have implemented § 47–5–124 in a fair and reasonable manner, allowing television and radio privileges to those inmates who cannot participate in work programs, such as the disabled and sick inmates. Only those inmates who have been placed in maximum security units, due to their conduct in the prison system [i.e., receipt of rules violations reports, etc.], and are therefore not eligible

2. The undersigned rejects the defendants' claims that they are entitled to Eleventh Amendment immunity or that the theory of respondeat superior bars relief. The Fifth Circuit Court of Appeals has previously reversed this district court's dismissal of the claim of consolidated plaintiff, Bobby Horton, by unpublished opinion. That court held that the Eleventh Amendment does not bar an action for declaratory and injunctive relief against a state official in his official capacity to enforce a state law alleged to violate a provision of the United States Constitution. *Horton v. Mississippi State Senate*, No. 95–60307, *unpublished*, 68 F.3d 468 (5th Cir., 1995).

3. The *Rawls* court cites several cases as authority for this holding, including *Dede v. Baker*, 1994 WL 198179 at 2 (6th Cir.1994); *Montana v.*

to participate in work programs, are housed in units which have no televisions or radios. Additionally, those inmates placed in protective custody are housed in these non-working units which have no television or radio privileges. The Parchman units not allowed televisions or radios are non-working units 32, 17 & 27. Unit 29 (C, D, E, & F buildings) and Unit 31 are non-working units but are allowed these privileges. Death row inmates are allowed these privileges because they have no opportunity to qualify for work programs; inmates not on death row have an opportunity to "work their way out" of maximum security units by continued good behavior.

2. The undersigned finds that the plaintiffs have failed to prove that the statute under attack has prevented them from practicing their particular religion. Plaintiffs are allowed to possess Bibles, Korans, and other religious literature; they have access to chaplains in their unit; and, they are not restricted from practicing their religion.

## CONCLUSIONS OF LAW [2] DUE PROCESS–EQUAL PROTECTION CLAIMS

In the opinion of the undersigned, there is simply no right to television while incarcerated created under the United States Constitution. *Rawls v. Sundquist*, 929 F.Supp. 284, 288–89 (M.D.Tenn.1996).[3] *See also Lil' Temple v. Dahm*, 905 F.Supp. 670, 674 (D.Neb. 1995) *citing Gladson v. Rice*, 862 F.2d 711, 713 (8th Cir.1988).[4] Although we find no

*Commissioners Court*, 659 F.2d 19, 23 (5th Cir. 1981) ("The claims relating to the usage of radio and television were properly dismissed as frivolous. These claims do not pertain to federal constitutional rights"); *Murphy v. Walker*, 51 F.3d 714, 718, n. 8 (7th Cir.1995); and, *Lester v. Clymer*, 1989 WL 66621 at 2 (E.D.Pa.1989) ("While it is not a subject of frequent litigation, it is nevertheless established that prisoners have no constitutional right to television.")

4. In *Glasshofer v. Jeffes*, 1989 WL 95360, *unpublished* (E.D.Pa.1989), *aff'd*, 897 F.2d 521 (3d Cir.1990), a prisoner challenged the prohibition at the Pennsylvania State Correctional Institute at Graterford on showing sexually explicit movies on in-house cable television channels, charging that it violated his First Amendment rights.

other state that has passed a similar statutory prohibition, that fact in and of itself does not forbid the Mississippi Legislature from choosing to restrict such items to those inmates eligible for a work program. In the opinion of the undersigned, such items are *luxuries* and any allowance of them in prisons is merely an altruistic act on the part of the Department of Corrections.

The Eighth Circuit Court of Appeals considered a § 1983 challenge against prison officials in Iowa for their refusal to provide in-cell cable television service to wheelchair-bound inmates. *More v. Farrier,* 984 F.2d 269 (8th Cir.1993). In finding against the prisoners, that Court held that "[d]espite television's importance in modern society, appellees have no fundamental right to in-cell cable television, and wheelchair-bound inmates are not a suspect class." *Id.* at 271, *citing City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 441–43, 105 S.Ct. 3249, 3255–56, 87 L.Ed.2d 313 (1985). Accordingly, the prisoner's equal protection claims were analyzed under a rational basis standard: even where similarly situated persons are treated differently by the state, state action is presumed constitutional and "will not be set aside if any state of facts reasonably may be conceived to justify it." *Id.* at 271, *citing McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). In so holding, the Court stated as follows:

> We will uphold a challenged state action so long as it bears a rational relationship to a state objective not prohibited by the Constitution. *See Stiles v. Blunt,* 912 F.2d 260, 263 (8th Cir.1990), *cert. denied,* 499 U.S. 919, 111 S.Ct. 1307, 113 L.Ed.2d 241

(1991). Not all government-created inequalities are forbidden by the Constitution. "The prohibition of the Equal Protection Clause goes no further than the invidious discrimination." *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955).

*Id.,* 984 F.2d at 271.

In the instant case, the State has passed a statute that "discriminates" between those prisoners who are eligible to work and those prisoners who, because of their behavior in prison, are ineligible to work. This inequality in classification is not based upon a suspect class, such as race,[5] and is therefore subject to only a "rational basis" review. A classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity. *Heller v. Doe by Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993). Merely treating two groups of inmates differently does not necessarily violate the equal protection clause. *Rawls,* 929 F.Supp. at 289, *citing Bonner v. Lewis,* 857 F.2d 559, 565 (9th Cir.1988).

In the opinion of the undersigned, the rationale for unequal treatment easily passes constitutional muster: it promotes the incentive among prisoners to enter work or educational programs and it promotes good behavior and discipline in order that prisoners will be eligible for such programs. These purposes behind treating prisoners differently are rational and further a legitimate penological interest, and, therefore, the Constitution is not violated. Moreover, the State has no obligation to produce evidence to sustain

---

In holding in favor of the prison, Judge Huyett wrote the following:

> At the outset, I note that it is doubtful whether there can be any federally protected right to the use of television by inmates. No court has recognized a federal constitutional right to the usage of radio and television by inmates. *Montana v. Commissioners Court,* 659 F.2d 19, 23 (5th Cir.), *cert. denied,* 455 U.S. 1026 [102 S.Ct. 1730, 72 L.Ed.2d 147] (1981) [1982]; *Rivera v. Berks County Prison,* no. 88–5700, 1988 WL 147587 (E.D.Pa. December 29, 1988) [available on Lexis, 1988 U.S.Dist. Lexis 15522]; *Lovern v. Cox,* 374 F.Supp. 32, 34 (W.D.Va.1974). Without such a right, it fol-

lows, a fortiori, that any restriction placed on use of the television cannot deprive inmates of a constitutionally protected rights. Thus, the prison's ban on showing x-rated movies on the prison television system may not implicate a federally protected right. However, for purposes of disposing of the instant motions, I assume arguendo such a right may exist.

**5.** The "central purpose" of the Equal Protection Clause is "to prevent the States from purposefully discriminating between individuals on the basis of race." *Rawls,* 929 F.Supp. at 289, n. 9, *citing Aiken v. City of Memphis,* 37 F.3d 1155, 1161 (6th Cir.1994).

the rationality of a statutory classification; "the burden is on the one attacking the [state action] to negative every conceivable basis which might support it." *Heller,* 509 U.S. at 320, 113 S.Ct. at 2643. Under the equal protection clause, prison administrators are entitled to place restrictions on groups of inmates as long as these restrictions are rational, rather than arbitrary and capricious. The undersigned finds that the statutory provision has been reasonably interpreted by M.D.O.C., in a non-arbitrary manner.

The fact that the Mississippi Department of Corrections previously allowed use of these items to all inmates as a common practice and procedure does not give rise to a liberty interest being established in favor of the inmates. No statutory authority had previously existed which *allowed* inmates these items; the use of same was simply a privilege granted by MDOC.

In the context of lawfully incarcerated inmates, the procedural due process protection arising from the Constitution itself are minimal. *See Lil' Temple v. Dahm,* 905 F.Supp. 670, 673–74, n. 4 (D.Neb.1995). Pursuant to the standard created in *Sandin v. Conner,* — U.S. ——, ——, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), a liberty interest will arise only where the deprivation at issue "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life". In the opinion of the undersigned, not being allowed access to television and radio is not "atypical" of prison life and certainly places no significant hardship on the individual.[6] It has only been in the past three decades that televisions have become common in prisons; no "right" to have these recreational items was ever established—correctional systems merely *allowed* them as incentives and privileges. The use of same did become widespread, as it did in the rest of society. In the opinion of the undersigned, no liberty interest or property interest was created merely because the Mississippi Department of Corrections has in the past allowed individual ownership of these items on a more widespread basis.

**6.** *But see Lil' Temple v. Dahm,* 905 F.Supp. 670, 675 n. 9 (D.Neb.1995) (factual record must be developed before determination as to whether

## EIGHTH AMENDMENT CLAIMS

Harsh "conditions of confinement" may constitute cruel and unusual punishment unless such conditions are "part of the penalty that criminal offenders pay for their offenses against society." *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) *quoting Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399–2400, 69 L.Ed.2d 59 (1981); *Gillespie v. Crawford,* 833 F.2d 47, 50 (5th Cir.1987). However, no "bright line" test can exist by which courts determine whether conditions of confinement are cruel and unusual because the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Rhodes,* 452 U.S. at 346, 101 S.Ct. at 2399. These standards are to be derived from objective factors so as to reflect the "mores of society and not merely the subjective views of judges." *Wilson v. Lynaugh,* 878 F.2d 846, 848 (5th Cir.1989); *Jackson v. Cain,* 864 F.2d 1235, 1245 (5th Cir.1989). Furthermore, in the Fifth Circuit, claims concerning conditions of confinement must be analyzed under a "totality of the conditions test." *McCord v. Maggio,* 910 F.2d 1248, 1250 (5th Cir.1990); *Jackson,* 864 F.2d at 1245.

The standard to be used in determining whether conditions of confinement are cruel and unusual under the Eighth Amendment was set forth in *Chapman, supra.* Indicia of confinement constituting cruel and unusual punishment include "wanton and unnecessary infliction of pain," conditions "grossly disproportionate to the severity of the crime warranting imprisonment," and deprivation of the "the minimal civilized measure of life's necessities." *Wilson v. Lynaugh,* 878 F.2d at 848 *quoting Chapman,* 452 U.S. at 346–47, 101 S.Ct. at 2398–2400; *Vega v. Parsley,* 700 F.Supp. 879, 883 (W.D.Tex.1988).

The Constitution simply does not mandate comfortable prisons. *Vega,* 700 F.Supp. at 883. The Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not

denying an inmate television constitutes an "atypical" or "significant" deprivation).

against those which cause mere discomfort or inconvenience. *Wilson v. Lynaugh,* 878 F.2d 846, 849 (5th Cir.1989). Inmates cannot expect the amenities, conveniences, and services of a good hotel. *Wilson,* 878 F.2d at 849, n. 5 *citing Harris v. Fleming,* 839 F.2d 1232, 1235–36 (7th Cir.1988).

The conditions complained of by these plaintiffs, the inability to have access to televisions or radios, simply do not amount to jail conditions tantamount to a wanton and unnecessary infliction of pain resulting in the unquestioned and serious deprivation of basic human needs. *See Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). Although these items have become intrinsically ingrained as common entertainment in our present society, they are still *recreational* luxuries and not *basic human needs.* Hence, the State has not violated the Eighth Amendment by refusing to allow certain inmates the privilege of access to televisions and radios.

### *FIRST AMENDMENT CLAIMS*

The plaintiffs herein allege that their First Amendment right to exercise their religious freedom has been violated due to the prohibition regarding televisions and radios. However, no evidence was put forth by these plaintiffs specifically indicating that any plaintiff's religious freedom was unduly restricted. The case of *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), set forth the general test to utilize regarding prison regulations and policies. This test was explicitly adopted by the United States Supreme Court in the context of prisoner challenges to regulations and policies under the First Amendment Free Exercise Clause in *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 349–51, 107 S.Ct. 2400, 2405, 96 L.Ed.2d 282 (1987). The test is: when a prison regulation (or policy) impinges on an inmate's constitutional rights, the regulation (or policy) is valid if it is *reasonably related to legitimate penological interests. Turner,* 482 U.S. at 89, 107 S.Ct. at 2261–62.

Four factors are used to gauge the reasonableness of a restraint or policy regulating a prisoner's exercise of his constitutional rights, including:

1. Whether the regulation or policy has a logical connection to the legitimate government interest invoked to justify it;[7]

2. Whether there are alternative means of exercising the rights that remain open to the inmates; (does the prison policy entirely stifle the prisoners' religious expressions?)

3. The impact that accommodation of the asserted constitutional rights will have on other inmates, guards and prison resources; (the ripple effect of striking down the policy)

4. The presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimis* costs to valid penological interests.

*Turner* at 482 U.S. 89–91, 107 S.Ct. at 2261–63.

Utilizing the *Turner* test, it is the opinion of the undersigned that the statutory prohibition regarding televisions and radios is reasonably related to legitimate penological interests, i.e., to increase the incentive to work among inmates and to increase the incentive for good behavior in order to be eligible to work. The undersigned further finds that the evidence proves that the inmate plaintiffs have access to chaplains at their unit, access to any religious literature that they desire, and access to church services conducted at the unit. These alternative means of exercising their religious freedom are sufficient to justify any restriction imposed upon the inmates by not been allowed to view or hear religious services on television and radio.

The evidence and testimony of the plaintiffs at the evidentiary hearing failed to show that any plaintiff was dependent upon a religious service aired on television or radio in the exercise of his right to religious freedom. No testimony or evidence was offered indicating that any plaintiff could not read religious literature as an alternative means to

---

**7.** This factor is controlling; the other three merely help a court determine if the connection *is* logical.

television and radio. Parchman offers nine chaplains of diverse faiths to assist inmates in their religious activities. None of the plaintiffs or witnesses testified that they had been *denied* access to the chaplains; in fact, none testified that they had ever even requested assistance from these chaplains.

The plaintiffs' evidence was totally lacking to show by a preponderance of the evidence that their religious freedoms have been impinged by having no access to radios and televisions.

### CONCLUSION

The court concludes that the plaintiffs have failed to meet their burden of proof to establish by a preponderance of the evidence that the statute in question, Miss.Code § 47–5–124, as applied by the Mississippi Department of Corrections, violates their constitutional rights. It is the recommendation of the undersigned that a Final Judgment in favor of the defendants be entered and that the complaint be dismissed with prejudice.

THIS the 19th day of September, 1996.