49 F.3d 1355
 Cathy PARGO, Dale Bahmer, Kim Frazier, Sheryl Snodgrass,
Christine Lockheart, Molly Bisson, Willetta Davis, Linda
Thompson, Michele Neary, unknown persons of Iowa Men's
Reformatory, unknown plaintiffs similarly situated, Appellants,
v.
Mildred ELLIOTT, Richard Vander Mey, Joni Keith, Harold
McCormick, Jean Klingman, Johnny Brown, Jim
Schweison, Barbara Olk-Long, Sally
Chandler Halford, Appellees.
 No. 94-3399.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 13, 1995.
Decided March 15, 1995.
 
 C.A. Frerichs, Waterloo, IA, argued (Thomas P. Frerichs, on the brief), for appellants.
 Layne M. Lindebak, Asst. Atty. Gen., argued, for appellees.
 Before RICHARD S. ARNOLD, Chief Judge, ROSS, Senior Circuit Judge, and MURPHY, Circuit Judge.
 DIANA E. MURPHY, Circuit Judge.
 
 
 1
 This is an appeal from an adverse judgment entered after a court trial on the claims of the plaintiff class, inmates at the Iowa Correctional Institution for Women (ICIW). The women inmates at ICIW brought this 42 U.S.C. Sec. 1983 action against Iowa Department of Corrections officials and the ICIW superintendent seeking injunctive relief. They allege that their equal protection rights have been violated because prison services and programs provided to them differ substantially from those provided to Iowa men inmates. The trial court found that the class was not similarly situated to Iowa male prisoners and that program differences for men and women inmates did not result from intentional discrimination. Appellants argue the court applied erroneous legal standards. Because this matter is unreviewable without detailed factual findings, we vacate and remand.
 
 
 2
 Trial was held over six days in March and April, 1994. The parties submitted extensive pre-trial materials, detailed proposed findings of fact, and post-trial briefs. The court heard the testimony of some dozen witnesses who compared prison programs at ICIW to those offered to men prisoners, and the record was reopened for two days in June and July for the submission of additional evidence. The trial transcript is over one thousand pages.
 
 
 3
 On September 23, 1994 the trial court issued a short decision which included limited factual findings primarily concerning prisoner gender segregation and the state inmate custody classification system. Although the court stated there were "clear differences" in programs and services for men and women prisoners, it made no findings concerning those differences, but concluded that plaintiffs failed to establish that gender discrimination "motivated the design or implementation of programs and services offered at ICIW." Opinion and Judgment at 3.
 
 
 4
 The trial court concluded that the case was controlled by Klinger v. Dep't of Corrections, 31 F.3d 727 (8th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1177, 130 L.Ed.2d 1130 (1995). Klinger was a class action brought by inmates of the women's prison facility in Nebraska who claimed that they received inferior programs and services compared to inmates in one of the prisons for men, the Nebraska State Penitentiary. There was no equal protection violation because plaintiffs were not similarly situated to the men at the penitentiary for reasons including institution size, average sentence length, and custody classification level. Id. at 731-32. In light of such differing characteristics, program-to-program comparisons of the two facilities were not probative.
 
 
 5
 Klinger does not stand for the proposition that women and men prison inmates can never be similarly situated for purposes of equal protection analysis, and the trial court erred in concluding that Klinger necessarily rendered irrelevant the types of comparisons offered by plaintiffs. In this case plaintiffs took a different approach from the proof offered in Klinger. They focused on differences in programs available to men and women with the same types of custody classification and sentence length. They claim that differences exist for similarly situated inmates in such areas as access to a law library, rules concerning prisoner legal assistance, availability of furloughs and work release, access to educational programs and the amount of daily study time permitted, availability of behavior modification classes and sex offender therapy programs, and access to yard privileges and hobby crafts.
 
 
 6
 The women inmates assert that the government must demonstrate that the differences in prison programs and services are substantially related to an important governmental interest, see Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), and that the trial court erred in concluding that a lower level of judicial scrutiny should apply. Relying on Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), the trial court reasoned that because the judgment of prison authorities is afforded deference, plaintiffs bear the burden of showing that intentional discrimination motivated the differences in programs and services. See Personnel Administrator of Massachusetts v. Feeney, 442 U.S. 256, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (women challenging a law giving state employment preference to veterans must demonstrate that it reflected invidious discrimination).
 
 
 7
 Turner involved constitutional challenges to Missouri prison regulations restricting an inmate's rights to correspond and to marry; the state justified the regulations primarily out of concern for institutional security. The Supreme Court reasoned that issues of day-to-day prison management are unsuited to judicial review, and that courts should not substitute their judgment for that of prison administrators. Thus, when a regulation restricting inmates' constitutionally protected rights is challenged, the appropriate standard of review is whether the regulation is rationally related to a legitimate penological purpose. Turner, 482 U.S. at 89, 107 S.Ct. at 2261. This court has recognized that internal security is foremost among the legitimate penological objectives contemplated in Turner. Timm v. Gunter, 917 F.2d 1093, 1099 (8th Cir.1990), cert. denied, 501 U.S. 1209, 111 S.Ct. 2807, 115 L.Ed.2d 979 (1991).
 
 
 8
 Not all reviews of prison policies or practices require judicial deference, however. The District of Columbia Circuit held in Pitts v. Thornburgh, 866 F.2d 1450 (1989), that the Turner standard of scrutiny was inapplicable to the District of Columbia's policy of housing women inmates in a distant facility and men inmates in a near-by institution because the practice involved "general budgetary and policy choices." Pitts applied traditional heightened scrutiny and required a showing by the government that the policy was substantially related to an important governmental interest. Turner does not foreclose all heightened judicial review. Id. Our cases also indicate that Turner does not render prison regulations immune from judicial review. See More v. Farrier, 984 F.2d 269 (8th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 74, 126 L.Ed.2d 43 (1993) (reviewing disabled inmates' equal protection claim); see also Timm, 917 F.2d 1093 (reviewing inmate gender equal protection claim). Nor does it relieve the trial court of its duty to "take cognizance of the valid constitutional claims of prison inmates." Turner, 482 U.S. at 84, 107 S.Ct. at 2259.
 
 
 9
 Although the trial court noted generally that there were "some clear differences" between programming at ICIW and at male institutions, it made no factual findings about the various programs and services, whether men and women inmates were similarly situated in terms of any particular program area, the differences in the programs, or the reasons for them. After examining the thousand page transcript and discussing the record with counsel at oral argument, it became apparent that this matter is unreviewable without more detailed factual findings. A remand is thus necessary, and it will be up to the trial court to determine the correct standard to apply to the facts which it finds.
 
 
 10
 Accordingly, we vacate the judgment and remand to the trial court to make detailed factual findings and to formulate conclusions based on such findings. It shall then enter a new decision and certify its findings and conclusions back to this court; this panel will meanwhile retain jurisdiction over the appeal.