69 F.3d 280
 Cathy PARGO; Dale Bahmer; Kim Frazier; Sheryl Snodgrass;
Christine Lockheart; Molly Bisson; Willetta Davis; Linda
Thompson; Michele Neary; unknown persons of Iowa Men's
Reformatory; unknown plaintiffs similarly situated, Appellants,
v.
Mildred ELLIOTT; Richard Vander Mey; Joni Keith; Harold
McCormick; Jean Klingman; Johnny Brown; Jim
Schweison; Barbara Olk-Long; Sally
Chandler Halford, Appellees.
 No. 94-3399.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 19, 1995.
Decided Nov. 8, 1995.
Rehearing Denied Jan. 16, 1996.
 
 C.A. Frerichs, Waterloo, Iowa, argued for appellants (Thomas P. Frerichs, Waterloo, Iowa, on brief).
 Layne M. Lindebak, Assistant Attorney General, Des Moines, Iowa, argued for appellees.
 Before RICHARD S. ARNOLD, Chief Judge, and ROSS and MURPHY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellants are women inmates at the Iowa Correctional Institution for Women (ICIW) who appealed from a judgment dismissing their equal protection claims for declaratory and injunctive relief against Iowa Department of Corrections officials and the ICIW superintendent. We vacated and remanded for more detailed findings and conclusions about alleged differences in the challenged prison programs and services. Pargo v. Elliott, 49 F.3d 1355, 1357 (8th Cir.1995). The district court[1] subsequently certified back to this court 115 pages of additional findings and conclusions, analyzing each claim of disparate treatment on the merits, as well as discussing other issues raised by the parties. The parties then submitted supplemental briefs and materials and presented further oral arguments. After carefully considering the entire record and the district court's additional findings and conclusions, we now reinstate the judgment and affirm.
 
 
 2
 The women prisoners at ICIW argue that they are similarly situated to men inmates with the same security classification at other prisons, but that they receive different treatment, programs, and services. One major focus is on inmates classified as minimum live-out (MLO). Appellants claim that women MLOs are unconstitutionally treated in comparison with their male MLO counterparts: women MLOs are classified in a different manner, live in more confined housing, have fewer furlough and off-ground work opportunities, enjoy less library time and yard privileges, participate in different substance abuse programs, and see visitors in more restrictive settings. Appellants also contend that women inmates in other security classification levels do not have the same legal assistance, work release, behavior modification classes, sex offender therapy programs, and yard and library privileges as those available to men inmates with the same classification. They believe that the programs must be examined under heightened scrutiny. See Craig v. Boren, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976).
 
 
 3
 The prison officials respond that heightened scrutiny is not needed because appellants do not directly challenge the classification which segregates women and men by prison, nor do they contest the process by which program decisions are made at the prisons or any general budgetary or policy choice. See Pitts v. Thornburgh, 866 F.2d 1450, 1454 (D.C.Cir.1989). They say none of the program differences result from invidious gender-based discrimination. See Personnel Administrator of Mass. v. Feeney, 442 U.S. 256, 274, 99 S.Ct. 2282, 2293-94, 60 L.Ed.2d 870 (1979). Finally, whether ICIW women prisoners are similarly situated to male inmates is no longer relevant since the district court went on to reach the merits of the appellants' claims.
 
 
 4
 The district court first discussed whether ICIW women prisoners were similarly situated as a whole or in groups to male prisoners and what legal standards should apply. It then went on to analyze thoroughly each program and practice as applied to all ICIW inmates and as to women inmates according to custody level (minimum live-out, minimum security, medium security, and maximum security). It specifically compared the various programs available to female inmates in a particular custody classification against those available to male inmates at all custody levels. For example, the district court discussed how women MLOs are classified and what services they received in relation to the classification procedures and programs applicable to any male inmate. After scrutinizing all of the claims, the court found no evidence of invidious discrimination. It also determined that the programs and services available to women and men inmates as a whole, or according to custody level, were substantially similar to those received by any male inmate given the various institutional needs and circumstances. Any differences were found to be rationally related to legitimate penological interests such as security and rehabilitation.
 
 
 5
 After carefully reviewing the record and the district court's detailed findings about the challenged prison programs and practices, we conclude that these findings are not clearly erroneous. See Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); Fed.R.Civ.P. 52(a). Accordingly, since the women prisoners are unable to prevail on the merits of their claims, the judgment dismissing their claims is reinstated and affirmed.
 
 
 
 [1]
 The Honorable Celeste F. Bremer, United States Magistrate Judge, who tried the case with the consent of the parties