HEANEY, Circuit Judge,
concurring in part and dissenting in part.
I agree that the female inmates’ claim that prison officials purposefully discriminated against them in the management of post-secondary educational programs is rendered moot by the correction department’s unfortunate suspension of all contracts with local colleges and universities to offer post-secondary and vocational courses to either male or female inmates. I disagree, however, with the majority’s conclusion that the class of female inmates is not similarly situated to male inmates for the purpose of challenging the assignment and organization of prison industry programs under the Equal Protection Clause. I also, disagree that the female inmates have failed to show discriminatory intent on the part of the Department of Corrections. Therefore, I respectfully dissent from Parts III and IV of the majority’s opinion.
I do not quarrel with the majority’s citation to the basic rule that a party seeking relief for gender-based discrimination under the Equal Protection Clause must demonstrate that a state actor has treated her differently than other similarly situated persons because of her gender. Nor do I dispute the corollary rule that a state may treat dissimilarly situated persons in a-dissimilar manner. In my view, however, the court is wrong to adopt an overly formalistic approach to the threshold question of whether female and male inmates are similarly situated.
While the court in Klinger v. Department of Corrections, 31 F.3d 727, 731 (8th Cir.1994), compared inmate populations,' length of sentences, and security classifications in holding that female inmates at one Iowa prison were dissimilarly situated from male inmates at another institution, such factors should not be rigidly applied. As the majority artfully demonstrates, it is highly unlikely that any two institutions in a state’s prison system will have an identical inmate composition but for the fact that one houses women and the other houses men; specific differences become more tenuous and less important when the challenge is system-wide. While the segregation of inmates by gender is constitutional, the natural consequences of that segregation — e.g., smaller institutions, shorter aggregate lengths of stay, broader ranges of security ratings within institutions — must not be used as a per se bar to our examination of the respective treatment women and men receive while incarcerated. If our equal protection inquiry ended every time a plaintiff fell short of showing different treatment at a mirror-image facility, then despite our admonition to the contrary, Klinger would “stand for the proposition that women and men prison inmates can never be similarly situated for purposes of equal protection analysis.” Pargo v. Elliott, 49 F.3d 1355, 1356 (8th Cir.1995).
It is important not to lose sight of basic commonalities that justify similar treatment. All inmates, regardless of gender, are under the custody and control of the state as a result of their criminal behaVior; all are subject to the same general departmental regulations and policies; and the incarceration in all cases shares common goals, including the reform and rehabilitation of individual offenders. These common characteristics provide a basis for the Department of Corrections to design a program that gives substantially equal opportunities to women and men for rehabilitative work while confined. Although gross institutional differences might sometimes provide basis for finding groups of inmates dissimilarly situated, they do not in this case. General, legitimate concerns for security, the availability of inmates to fill positions, and the like are more relevant in examining whether dissimilar treatment of male and female inmates can be supported on non-discriminatory grounds.
Turning to that question, I further disagree with the majority’s conclusion that the female inmates’ claim must fail because they have not proved discrimination on the part of *653 prison officials. The women have brought forth enough to establish gender-based discrimination. The department offers women only three opportunities to participate in industry jobs, whereas male inmates have the opportunity to participate in twenty-one, on-site enterprises as well as an off-site warehousing and trucking operation. The jobs for men require more skills and give the men a considerable market advantage outside the prison setting. Where the same type of operation is set up at both a men’s and women’s institution, the men’s facility is significantly more sophisticated and industrial than the women’s counterpart. For example, while men at Moberly work in a printing industry that is equipped to do layout work for forms, letterhead, and envelopes, the Quick Print operation for women at Renz is “closer to a copy center.” App. at 281-32. With very few exceptions,[1] the industrial opportunities offered to female inmates fall within prevailing stereotypes of “women’s work”: telephone operators/telemarketers; data entry; and office copying. The Missouri Department of Corrections cannot adequately. explain the disparities between the industrial opportunities for women and men on neutral grounds and, more important, cannot explain its unwillingness to expend the effort to provide women with the same opportunities it provides to men. I disagree with the district court’s statement, adopted by the majority, that the dissimilar treatment is directly related to the size and location of the prisons and to the greater long-term availability of male inmates. Most of the industries could operate independent of their geographical location. Moreover, as of 1991, only a handful of the industries at the men’s institutions had staff sizes that might be difficult to generate at the women’s institutions. The state has not shown non-discriminatory reasons for determining the industrial opportunities it offers to female inmates. The womén, in contrast, have produced enough evidence from which to infer the Department of Corrections’ industry placements are based on stereotypical notions of what jobs women can perform and the lesser need for women to become skilled laborers.
In my view, the women inmates have established their case under the Equal Protection Clause that the Missouri Department of Corrections discriminates against them on the basis of their gender in the assignment and organization of prison industries throughout the state’s prison system. I would remand this case to the district court with directions to instruct the Department of Corrections to establish a remedial plan to correct the gender-based disparities.

. For example, as of 1991, two women at Renz were employed in what is called an agri-business enterprise where they perform minor maintenance and repair jobs on small machines. This operation, however, is a scaled-down version of what was in place when Renz housed male inmates and is quite different from and less skilled than the traditional cattle and crop farming work currently offered to male inmates at another Missouri institution.