**Willard Barrett WILSON, Plaintiff–Appellant,**

v.

**James A. LYNAUGH, Director, Texas Department of Corrections, Defendant–Appellee.**

No. 88–2768.

United States Court of Appeals, Fifth Circuit.

Aug. 2, 1989.

Cheryl M. Kornick (Law Student), Henry A. Gabriel, Loyola Law School, New Orleans, La., for plaintiff-appellant.

Robin Sanders, Robert S. Walt, Asst. Attys. Gen., Austin, Tex., for defendant-appellee.

Before BROWN, WILLIAMS, and JOLLY, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Wilson, an inmate in the Texas Department of Corrections (TDC) since 1979, filed an *in forma pauperis* (IFP) 42 U.S.C. § 1983 suit alleging that his exposure to environmental tobacco smoke (ETS) violated his Eighth Amendment right to be free from cruel and unusual punishment. The district judge dismissed Wilson's complaint with prejudice as frivolous pursuant to 28 U.S.C. § 1915(d). We affirm on the ground that Wilson's complaint is duplicative, reasserting allegations litigated in a prior suit, and thus may be dismissed as frivolous under § 1915(d).

### Round 1

Wilson, a non-smoker, first attempted to secure smoke-free confinement within the TDC in 1980 by filing *Wilson v. Estelle*, Civil No. H80–1029 (S.D.Tex. Sept. 20, 1983). Wilson claimed among other things that his exposure to tobacco smoke caused him to suffer from "pus filled sores" all over his body and difficulty breathing. He further alleged that the failure of the TDC Director, Estelle, to provide Wilson with non-smoking facilities at TDC constitutes cruel and unusual punishment in violation of his rights under the Eighth Amendment.

Wilson lost Round 1: in 1983 the district court granted the TDC Director's motion for summary judgment and dismissed Wilson's complaint pursuant to F.R.Civ.P. 56. The district court's order of dismissal adopted the memorandum and recommendation of the Magistrate who reviewed Wilson's claim. While the Magistrate found that Wilson had been told that it was "pos-

sible" that smoke caused his sores, it also stated that "no such diagnosis was ever made."[1] The Magistrate further concluded that exposure to ETS did not constitute cruel and unusual punishment, thus extinguishing Eighth Amendment grounds for Wilson's ETS exposure claim.[2]

### Round 2

The instant case was filed May 16, 1988. Once again Wilson asserts a § 1983 cause of action against the Director of TDC contending that Wilson has been and continues to be harmed by exposure to ETS. Wilson's alleged injuries in the instant complaint are impaired breathing and loss of eyesight. Wilson further complains that when he is in administrative segregation, thus housed separately from non-smokers, he is subjected to smoke from various burning materials in addition to tobacco smoke. These conditions, according to Wilson, constitute cruel and unusual punishment and violate his Eighth Amendment rights.

Wilson enjoyed even less success in this second round of litigation against the Director of TDC. The district court after granting IFP status dismissed the complaint with prejudice on the grounds that it was frivolous. 28 U.S.C. § 1915(a) & (d). Wilson challenges this determination in the instant appeal.

### Put Up Your Dukes

Wilson asserts that the district court's 28 U.S.C. § 1915(d) dismissal of his claim as frivolous was error because (i) it failed to recognize that confinement which subjects an inmate to health hazards of ETS can support a § 1983 claim because it implicates Eighth Amendment guarantees against cruel and unusual punishment, (ii) the court failed to investigate fully the legal or factual basis for Wilson's claim before dismissal, i.e. hold a *Spears*[3] hearing, and (iii) the district judge erred in

concluding that the TDC Director could only be held liable by invoking, contrary to the bar of *Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the doctrine of *respondeat superior.* We need not reach contentions (ii) and (iii) since not only does (i) fail, but it raises the subsidiary, and we believe controlling, question of whether the instant case is frivolous relitigation of the disposition of Wilson's 1980 claim.

### Rhodes to Victory?

In *Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981), the Supreme Court analyzed limitations the Eighth Amendment places on conditions of confinement within prisons. In grappling for a distinction between conditions of confinement which constitute cruel and unusual punishment and those which are mere restrictions consonant with the penal function of incarceration, the Court directs us to the "evolving standards of decency that mark the progress of a maturing society." *Id.* at 346, 101 S.Ct. at 2399, 69 L.Ed. 2d at 68 (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)). These standards are to be derived from "objective factors" so as to reflect the mores of society and not merely the subjective views of judges. *Id.* (citations omitted).

Indicia of confinement constituting cruel and unusual punishment, according to the *Rhodes* Court, include "wanton and unnecessary infliction of pain,"[4] conditions "grossly disproportionate to the severity of the crime warranting imprisonment," and deprivation of "the minimal civilized measure of life's necessities." *Id.* 452 U.S. at 346–47, 101 S.Ct. at 2399, 69 L.Ed.2d at 68–69. But the Court cautions "[t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their

---

**1.** Magistrate's Memorandum and Recommendation (MMR) at 2.

**2.** MMR at 3.

**3.** *Spears v. McCotter,* 766 F.2d 179 (5th Cir. 1985).

**4.** *E.g.,* pain inflicted "totally without penological justification." *Gregg v. Georgia,* 428 U.S. 153, 183, 96 S.Ct. 2909, 2929, 49 L.Ed.2d 859, 880 (1976).

offenses against society." *Id.* "When 'the cumulative impact of the conditions of incarceration threatens the physical, mental, and emotional health and well-being of the inmates ...' the court must conclude that the conditions violate the Constitution." *Id.* at 364, 101 S.Ct. at 2408, 69 L.Ed.2d at 80 (Brennan, J., concurring).

■ In this Circuit, we have recognized that conditions of confinement which expose inmates to communicable diseases and identifiable health threats implicate the guarantees of the Eighth Amendment. *E.g., Jones v. Diamond,* 636 F.2d 1364, 1374 (5th Cir.), *cert. dismissed,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981); *Bienvenu v. Beauregard Parish Police Jury,* 705 F.2d 1457, 1460 (5th Cir.1983); *Gillespie v. Crawford,* 833 F.2d 47, 50 (5th Cir.1987), *vacated on other grounds,* 858 F.2d 1101 (5th Cir.1988) (en banc). In sum, the Eighth Amendment may afford protection against conditions of confinement which constitute health threats but not against those which cause mere discomfort or inconvenience.[5]

### Technical Knockout

This is not the first time Wilson has complained that his exposure to ETS has caused physical harm and violates the guarantees of the Eighth Amendment. Wilson unsuccessfully advanced this argument in Round 1 of his litigation against TDC. Although the nature of the injury

suffered from exposure to ETS is characterized differently in Round 2, the district judge's § 1915(d) dismissal of the instant suit as frivolous was based in part on his classification of the two rounds of litigation as "[r]epetitious litigation of virtually identical causes of action."[6] Based on prior cases where this Court has dismissed IFP cases as duplicative and repetitive pursuant to § 1915(d) and analagous principles of res judicata, the instant case (Round 2) is duplicative and properly subject to dismissal as frivolous under § 1915(d).[7]

■ Subsequent to the decision of the district court, the Supreme Court held that IFP complaints which fail to pass F.R. Civ.P. 12(b)(6) scrutiny for failure to state a claim are not necessarily frivolous within the meaning of § 1915(d). *Neitzke v. Williams,* — U.S. —, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).[8] After *Neitzke* this Court has held that dismissal of an IFP suit as frivolous pursuant to § 1915(d) is proper if: (1) the claim's realistic chance of ultimate success is slight, or (2) the claim has no arguable basis in law and fact.[9] *Pugh,* 875 F.2d at 438 (5th Cir.1989) (modifying *Cay v. Estelle,* 789 F.2d 318, 326 (5th Cir.1986)). District courts have broad discretion in determining whether a complaint is frivolous under § 1915(d). *See, e.g., Cay,* 789 F.2d at 325; *Green v. McKaskle,* 788 F.2d 1116, 1119 (5th Cir. 1986). This broad discretion derives from § 1915's dual role of keeping the courtroom doors open to all litigants regardless

---

5. As the Seventh Circuit stated so aptly: "Inmates cannot expect the amenities, conveniences and services of a good hotel; however, the society they once abused is obliged to provide constitutionally adequate confinement." *Harris v. Fleming,* 839 F.2d 1232, 1235–36 (7th Cir.1988).

6. Memorandum opinion at 3 (citation omitted).

7. The district judge used equivocal language in his order of dismissal. Citing *Hill v. Estelle,* 423 F.Supp. 690 (S.D.Tex.1976), he stated "[r]epetitious litigation of virtually identical causes of action is patently malicious and subject to dismissal under 28 U.S.C. § 1915(d)." Yet, the district judge concluded his order stating the complaint was frivolous—not malicious—under § 1915(d).
  Although we do not have to determine whether a second attempt to litigate a claim is "mali-

cious," we conclude that the district court could decide that relitigation in this instance merits dismissal as frivolous. As such, we adopt the approach of this Court in *Pugh v. Parish of St. Tammany,* 875 F.2d 436 (5th Cir.1989), and affirm the order of dismissal yet in so doing employ reasoning different than that enunciated by the district judge.

8. *Neitzke* does not affect the outcome of this case for the district judge did not invoke a standard equivalent to Rule 12(b)(6) to achieve dismissal under the guise of § 1915(d) frivolity to dismiss the instant complaint.

9. The latter is the definition of frivolous expressly adopted by the Supreme Court in *Neitzke,* 490 U.S. at —, 109 S.Ct. 1831, 104 L.Ed.2d at 347.

of financial resources, yet guarding against abuse of this free access by litigants, such as prisoners, who have nothing to lose by flooding courts with suit after suit. *See Green,* 788 F.2d at 1119–20; *Jones v. Bales,* 58 F.R.D. 453, 463–64 (N.D.Ga.1972), *aff'd,* 480 F.2d 805 (5th Cir.1973). In § 1915(d) determinations the district judge effectively screens cases which if not for their IFP status would be deterred by either the actual cost of litigation or the imminence of Rule 11 sanctions. *Neitzke,* 490 U.S. at ——, 109 S.Ct. at 1832–33, 104 L.Ed.2d at 348–49. To this end, IFP complaints may be dismissed as frivolous pursuant to § 1915(d) when they seek to relitigate claims which allege substantially the same facts arising from a common series of events which have already been unsuccessfully litigated by the IFP plaintiff. *Bailey v. Johnson,* 846 F.2d 1019 (5th Cir.1988) (citing *Robinson v. Woodfork,* No. 86–3735 (5th Cir. May 22, 1987) (unpublished); *McCullough v. Morgan,* No. 86–2022 (5th Cir. July 3, 1985) (unpublished); *Hill v. Estelle,* 423 F.Supp. 690 (S.D.Tex.1976), *aff'd,* 543 F.2d 754 (1976)).

### In the Res Judicata Corner

▪ Wilson urges us to reverse the district court's dismissal of his suit as duplicative on the ground that it is not barred by principles of res judicata.[10] He first contends that res judicata should not bar his second suit since a once juridically acceptable condition of confinement may later become "cruel and unusual" punishment as a consequence of evolving contemporary standards. Wilson also argues that res judicata does not bar the instant complaint because it is asserts different facts. Specifically, the 1980 suit alleges essentially that the symptoms described by Wilson were brought about by exposure to ETS and smoke from other burning materials, whereas the instant claim asserts new facts regarding the dangers of exposure to ETS. Those new facts, according to Wilson, could not have been asserted in Round 1 because evidence of the dangers of ETS was not published until some 3 years after the end of Round 1. *See, e.g.,* Public Health Service, U.S. Dep't of Health, Educ. & Welfare, *The Health Consequences of Involuntary Smoking: A Report of the Surgeon General* (1986).[11]

But what is asserted in Round 2 is not a new set of facts. In Round 2 Wilson alleges his confinement exposed him to ETS, and such exposure caused him physical injuries. All that is new is the contentions that subsequent developments or events have afforded some new evidence by which to establish the fact of exposure and injury which, he claims, is now violative of the Eighth Amendment.

As a general rule, changes in law do not prevent the application of res judicata. *Nilsen v. City of Moss Point,* 701 F.2d 556, 564 (5th Cir.1983) (en banc); *Clouatre v. Houston Fire & Casualty,* 229 F.2d 596, 598 n. 4 (5th Cir.1956); *Precision Air Parts, Inc. v. Avco Corp.,* 736 F.2d 1499 (11th Cir.1984), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 966, 83 L.Ed.2d 970 (1985). *See also* 18 Wright, Miller & Cooper, *Federal Practice & Procedure* § 4415 at 130 (1981). Indeed there have been exceptions to this general rule—most notably in the area of civil rights after the overruling of the "separate but equal" doctrine in *Brown v.*

---

**10.** In order for res judicata to bar a subsequent action:

[1] the parties must be identical in both suits
[2] the prior judgment must have been rendered by a court of competent jurisdiction
[3] there must have been a final judgment on the merits, and
[4] the same cause of action must be involved in both cases.

*Miller v. United States Postal Services,* 825 F.2d 62, 64 (5th Cir.1987) (citing *Nilsen v. City of Moss Point,* 701 F.2d 556, 559 (5th Cir.1983) (en banc)).

**11.** In his report the Surgeon General concluded: "(1) involuntary smoking is a cause of disease, including lung cancer, in healthy nonsmokers, (2) the children of smokers compared with the children of nonsmokers have an increased frequency of respiratory infections and symptoms, as well as slightly smaller rates of increased lung function as their lungs mature, and (3) the simple separation of smokers and nonsmokers within the same air space may reduce, but does not eliminate, the exposure of nonsmokers to environmental tobacco smoke. Appellant's Brief at 10 (citing Surgeon General's Report at 7).

*Board of Education.*[12] *E.g., Christian v. Jemison,* 303 F.2d 52, 54–55 (5th Cir.), *cert. denied,* 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed. 2d 229 (1962). This exception, from which Wilson must draw support, applies "where, between the first and second suits, there has been an intervening change in the law or modification of significant facts creating new legal conditions." *Jackson v. DeSoto Parish School Board,* 585 F.2d 726, 729 (5th Cir.1978) (citations omitted).[13]

As formulated in *Jackson,* the exception touches on both of Wilson's arguments. First, Wilson suggests that the *Rhodes* concept that cruel and unusual punishment is defined by the "evolving standards of decency that mark the progress of a maturing society" prevents application of res judicata to bar Wilson's Eighth Amendment challenge to his conditions of confinement. However, Wilson cannot point to any Supreme Court or Fifth Circuit decision which constitutes an "intervening change in the law" which would render his exposure to ETS while incarcerated a violation of his Eighth Amendment rights. The only support Wilson can garner for his position is *Avery v. Powell,* 695 F.Supp. 632 (D.N.H. 1988), where the district judge found "that conditions of plaintiff's confinement may constitute punishment cognizable under the Eighth Amendment." 695 F.Supp. at 639. *But cf. Gorman v. Moody,* 710 F.Supp. 1256, 1262 (N.D.Ind.1989) ("As our society moves toward a so-called smoke-free environment and new laws are enacted, there may come a time when the 'evolving standards of decency that mark the progress of society' demand a smoke-free environment

in a prison setting. However, this is not the case now....").

Not only is there yet to be an intervening change in law so as to trigger the res judicata exception Wilson seeks, it is also relevant to our Eighth Amendment analysis that "society cannot yet completely agree on the propriety of nonsmoking areas and a smoke-free environment."[14] *Gorman,* 710 F.Supp. at 1262.

In order for new facts to constitute a new cause of action and thus allow a claim to be relitigated, those facts must be both "significant" and create "new legal conditions." *Hernandez v. City of Lafayette,* 699 F.2d 734, 737 (5th Cir.1983). Wilson's second argument—that the availability of objective medical evidence of the dangers of ETS, perhaps nonexistent or unknown during Round 1 of this litigation, merits an exception to the traditional standards of res judicata—is effectively subsumed by his first argument.

### Recap of the Bout

Our analysis of this Court's precedents involving both res judicata and § 1915(d) dismissals of IFP claims as duplicative litigation convinces us that the district court did not abuse its discretion in dismissing the instant case under § 1915(d) as frivolous because it is duplicative. However, we hasten to add that this decision has limited significance in terms of *stare decisis,* especially since this is a § 1915(d) dismissal which unlike F.R.Civ.P. 12(b)(6) dismissal is not a decision on the merits. As such, our decision should not be construed as foreclosing in perpetuity the ability of prisoners, including Wilson, to litigate their

---

**12.** 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

**13.** The rationale of this exception to traditional res judicata principles is to avoid "inequities in the implementation of a constitutional scheme [which] may result from inflexible application of the rules of merger and bar.... When such inequities involve important ongoing social or political relationships, a second action should be allowed even if the claim set forth is not viewed as different from that presented in the initial proceeding. Restatement (Second) of Judgment § 26 comment e. Or in the oft-quoted words of our brother Wisdom: "faced with

changing law, courts hearing questions of constitutional right cannot be limited by res judicata. If they were, the Constitution would be applied differently in different locations." *Parnell v. Rapides Parish School Board,* 563 F.2d 180, 185 (5th Cir.1977).

**14.** Society certainly includes the government. The government both bestows substantial subsidies on those who grow and process tobacco and, at the same time, demands warning labels on cigarette packages and supports the apparatus of the Surgeon General in his public exhortations against the evils of smoking tobacco.

ETS claims. Changing mores can alter the constitutionality of conditions of confinement, yet such changes tend to be slow especially when interests are as polarized as smokers and non-smokers. If—and the if is a very big one—during his incarceration there is an intervening significant change in law or emergence of new legal conditions, Wilson will be able to litigate such claims free of a res judicata or duplicative litigation bar.

AFFIRMED.