Curtis **SHABAZZ**, ID # 522178,
Plaintiff,

v.

Richard K. **FRANKLIN**,
et al., Defendants.

No. 3:04–CV–0602–N.

United States District Court,
N.D. Texas, Dallas Division.

March 28, 2005.

Curtis Shabazz, TDCJ Clements Unit, Amarillo, TX, pro se.

### ORDER ACCEPTING FINDINGS AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

GODBEY, District Judge.

After reviewing all relevant matters of record in this case, including the Findings, Conclusions, and Recommendation of the United States Magistrate Judge and any objections thereto, in accordance with 28

U.S.C. § 636(b)(1), the undersigned District Judge is of the opinion that the Findings and Conclusions of the Magistrate Judge are correct and they are accepted as the Findings and Conclusions of the Court.

For the reasons stated in the Findings, Conclusions, and Recommendation, the Court **DENIES** the following motions filed by plaintiff: Motion to Amend (doc. 7); Motion for Leave of Court to Have Process Effected by a United States Marshal (doc. 8); Motion Seeking Leave to File Second Amendment/Supplement (doc. 11); Plaintiff's First Motion for an Extension of Time to Serve Defendants (doc. 12); and Motion for the Court to Intervene (doc. 13). In addition, the Court **DEEMS MOOT** plaintiff's Motion to Dismiss Certain Defendants (doc. 10). By separate judgment, the Court will formally dismiss this action consistent with the Findings, Conclusions, and Recommendation entered in this case.

*FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE*

RAMIREZ, United States Magistrate Judge.

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I. BACKGROUND

In March 2004, plaintiff filed this civil action pursuant to 42 U.S.C. § 1983 against his former attorney, Richard K. Franklin; Doug Dretke, Director of the Texas Department of Criminal Justice— Correctional Institutions Division (TDCJ); Gary Johnson, former Director of TDCJ,[1] Kevin Navarro, Dallas Police Investigator; Jim Bowles,[2] former Dallas County Sheriff; Jim Oatman, Assistant District Attorney for Dallas County; John Vance, District Attorney of Dallas County; Bill Meili and David Pickett, Assistant Prosecutors for Dallas County; Jack Hampton, former Judge, and Monta R. Peterson, Dallas Police Officer.[3] (Compl. at 1–2 and Attached Pages.)

Plaintiff alleges a conspiracy between defendants before and during plaintiff's 1991 state trial for an attempted murder of Katherine Burrow ("the conspiracy claims"). (*See* Compl. and Attached Pages.) Specifically, defense counsel allegedly conspired to violate plaintiff's civil rights by rendering ineffective assistance of counsel during that trial and depriving plaintiff of a fair trial. (Compl. at 2, Attached Pages at 5, 8–9.) The State defendants allegedly conspired to violate plaintiff's civil rights by denying him due process by presenting false testimony, suppressing favorable evidence, and in general depriving him of a fair trial. (Compl. at 2; Attached Pages at 1–4–9.) The TDCJ defendants allegedly conspired to continue the conspiracy and prevent its undoing by keeping plaintiff in isolated housing since July 1991 without legal representation. (Compl. at 2; Attached

---

1. Plaintiff does not list Gary Johnson as a defendant in his original complaint, but does identify him as a defendant later in the complaint. (*See* Attached Pages at 1–3, 14.)

2. Although plaintiff identifies the former Sheriff as "Bowels" in the original complaint, the Court utilizes the correct spelling.

3. For ease of reference, the Court groups these defendants as follows: (1) defense counsel (Franklin); (2) TDCJ defendants (Dretke and Johnson); and (3) State defendants (all other defendants).

Pages at 1–3, 7–8, 14.) Plaintiff further alleges that the TDCJ defendants have used false disciplinary infractions as a pretext to keep him isolated and that their last overt act occurred October 2003 and "will in all likelihood reoccur 4–2004 due to 1–30–04 false disciplinary conviction on 3–03–2004" ("the disciplinary claims"). (Attached Pages at 7–8, 14.)

Plaintiff seeks a declaratory judgment that defendants have violated his civil rights. (*Id.* at 10.) He also seeks injunctive relief in the form of release from his unconstitutional conviction for attempted murder. (*Id.* at 10–11.) He concedes that he previously brought an action in 1993 against defendants for monetary damages but now submits that the Court did not adjudicate his claims because he had not overturned his state sentence. (*See id.* at 10 and Decl. attached to Compl.)

Although plaintiff initially sought to proceed *in forma pauperis* (IFP), he paid the filing fee for this action on May 4, 2004, after the Court noted that 28 U.S.C. § 1915(g)[4] barred him from proceeding IFP because he had previously brought three or more civil actions or appeals in federal court that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. Plaintiff also paid a $25 sanction imposed in *Shabazz v. Martin,* No. 9:93–CV–0118–JH (E.D.Tex.) that would have prevented further pursuit of this action.

After commencing this action and paying the filing fee, plaintiff filed numerous documents with the Court, including: (1) a Motion to Amend (doc. 7) received May 20, 2004; (2) a Motion for Leave of Court to Have Process Effected by a United States Marshal (doc. 8) received on June 17, 2004, (hereinafter Mot. for Process); (3) a Notice of Lawsuit and Motion to Dismiss Certain Defendants (doc. 10) received July 1, 2004; (4) a Motion Seeking Leave to File Second Amendment/Supplement (doc. 11) received August 4, 2004, (hereinafter Second Mot. Amend); (5) Plaintiff's First Motion for an Extension of Time to Serve Defendants (doc. 12) received August 20, 2004; (6) a Motion for the Court to Intervene[5] (doc. 13) received December 10, 2004; and (7) a document titled "Former Complaint" (doc. 14) received on December 30, 2004. To date, no process has been issued in this case.

## II. PREVIOUS LITIGATION

As noted above, plaintiff has previously filed numerous civil actions in federal court. (*See* Attached Pages at 13 (showing thirteen previous cases).)[6] Plaintiff concedes that his current action "was previously [in] this Court in Number 3–93–CV–648." (*See* Compl.) Named in that *in forma pauperis* action, entitled and numbered *Shabazz v. Franklin,* No. 3:93–CV–0648–G (N.D. Tex.1993), were Franklin, Meili, Navarro,[7] Pickett, Hampton, Peter-

---

**4.** Section 1915(g) provides:
 In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

**5.** By the motion to intervene, plaintiff asks the Court to remove him from state custody due

to various alleged prison matters. The Court cannot grant the requested relief, and thus denies the motion to intervene.

**6.** The Court's independent research has uncovered twenty-eight previous habeas or civil actions filed by plaintiff.

**7.** Petitioner spells the name "Navarro" in this action, but spelled it "Navorro" in his previous action. Regardless of spelling, the individual appears to be the same person.

son, and Bill Long. (Compl. received by Court on Apr. 1, 1993). On October 26, 1993, a United States Magistrate recommended that the Court dismiss that action as frivolous. *See id.* (Findings & Recommendation dated Oct. 26, 1993). The Magistrate Judge found the action barred by the statute of limitations, except for claims against Judge Hampton which were barred by immunity. *Id.* On November 8, 1993, the District Court accepted the findings of the Magistrate Judge and dismissed the action as frivolous. *See id.* (Order and Judgment dated Nov. 8, 1993).

At least three later federal cases are also relevant to the instant litigation. In at least two of those prior actions, plaintiff unsuccessfully challenged disciplinary proceedings based upon alleged false disciplinary charges. *See Shabazz v. Collins,* No. 4:95–CV–0022 (S.D.Tex.) (Order of Partial Dismissal dated May 22, 1995, which dismissed claims against Gary Johnson and other TDCJ employees); *Shabazz v. Harris,* No. 4:95–CV–3145 (S.D.Tex.) (Order of Partial Dismissal dated Dec. 21, 1995). In addition, plaintiff filed a previous action against Gary Johnson for keeping him in administrative segregation since July 1991. *See Shabazz v. Johnson,* No. 5:01–CV–0070 (E.D.Tex.2001) (Compl. received on Dec. 4, 2000, and transferred to a different division in 2001 after payment of filing fee). On January 24, 2002, a Magistrate Judge recommended that the action be dismissed as untimely. *Id.* (report and recommendation). On July 1, 2002, the District Court adopted that recommendation, and on July 2, 2002, dismissed the action with prejudice. *Id.* (Order and Judgment). On March 17, 2003, the Fifth Circuit Court of Appeals found the action timely, but affirmed the dismissal because the complaint did "not support an arguable constitutional violation." *Shabazz v. Johnson,* No. 02–41060, 64 Fed.Appx. 417, 2003 WL 1524652, *1 (5th Cir.2003).

### III. MOTIONS FOR LEAVE TO AMEND

In his first motion for leave to amend, plaintiff seeks to add John Wiley Price, County Commissioner's Court; Bill Long or his successor Jim Hamlin, District Clerk of Dallas County; and Jean Hill, Court Reporter as defendants in this action. (*See* Mot. Amend. at 1–3A.) [8] Plaintiff alleges that these individuals knew of the conspiracy which lies at the heart of this action, but did nothing to stop or prevent it. (*Id.* at 3A.) The motion to amend also reiterates plaintiff's claims of ineffective assistance of counsel, prosecutorial misconduct, civil conspiracy, and illegal restraint. (*Id.* at 5–27.) Subsequent to the first motion to amend, plaintiff filed a request to dismiss these three defendants, as well as defendant Meili. (*See* Notice of Lawsuit & Mot. to Dismiss at 2.) Plaintiff also filed a second motion seeking leave to file a second amendment/supplement to assert (1) a violation of his right to equal protection based upon a manufactured indictment that led to his attempted murder conviction; (2) suppression of evidence by Franklin; (3) unfair proceedings at trial and on appeal; (4) denial of witnesses to testify on his behalf; (5) violation of due process due to ineffective assistance of counsel; and (6) a double jeopardy violation. (*See* Second Mot. Amend at 1–21.)

Fed.R.Civ.P. 15(a) permits parties to amend their pleadings "once as a matter of course at any time before a responsive pleading is served." Because no responsive pleading has been served in this action, Rule 15(a) permits plaintiff to amend his original complaint without leave

---

**8.** The motion to amend has an unnumbered page between pages 3 and 4. The Court cites to that page as page 3A.

of court. Plaintiff, however, has not filed an amended complaint. Instead, he has twice filed motions seeking leave to amend. When a party moves to amend his complaint, he must do so in a procedurally proper manner by complying with applicable rules of procedure. The local rules of this Court require such party "to include the proposed amended pleading so that the Court can evaluate whether to grant the motion." *Infomart (India), Pvt., Ltd. v. Metrowerks Corp.,* No. 3:04–CV–1299–N, 2005 WL 292433, at *14 (N.D.Tex. Feb.7, 2005) (citing L.R. 15.1). The Court properly denies leave to amend when the moving party fails to comply with Rule 15.1. *Bryant v. Orndorff,* No. 5:04–CV–215–C, 2005 WL 139115, at *5 (N.D.Tex. Jan.21, 2005); *Jones v. Dretke,* No. 3:03–CV–2629–D, 2004 WL 1698291, at *2 (N.D.Tex. July 28, 2004) (report and recommendation), *accepted by* unpub. order (N.D.Tex. Aug. 31, 2004). "All parties, even those who proceed without counsel, must abide by the local rules of this Court." *Jones,* 2004 WL 1698291, at *2.

In this case, plaintiff has not complied with the local rule of this Court that governs motions to amend. He has attached no copy of either proposed amendment as required by L.R. 15.1. Nor has he submitted an original and a second copy of either proposed amendment as required by L.R. 15.1. Such deficiencies are sufficient of themselves to deny plaintiff's motions to amend. Furthermore, plaintiff seeks to dismiss the individuals which he sought to add in his first motion. By denying the first requested amendment, the Court partially renders moot plaintiff's motion to dismiss the three defendants which he sought to add by that motion. As will be seen *infra,* the remainder of the first motion to dismiss is rendered moot by the recommendation entered herein. For these reasons, the Court should deny plaintiff leave to amend.[9]

## IV. MOTIONS RELATED TO SERVICE OF PROCESS

Plaintiff requests that a United States marshal effect service on defendants Franklin, Vance, Bowles, Navarro, and Dretke. (*See* Mot. for Process.) He "recognizes that it is his responsibility to serve copy [sic] of the complaint on defendants" despite his incarceration. (*See id.* at 6.) In accordance with Fed.R.Civ.P. 4(d), he has attempted to obtain a waiver of service from defendants Franklin, Dretke, Vance, and Bowles. (*See* Notice of Lawsuit.) Plaintiff also requests an extension of time to find a private process server so that he can serve defendants with summons and a copy of his complaint. (*See* Mot. for Extension.) Lastly, plaintiff filed a document titled "Former Complaint" that sets forth a series of events commencing in October 2004 related to his efforts to serve defendants Franklin, Dretke, Vance, and Bowles through a private process server. (*See* Former Compl.) He mailed summons for each of those defendants to the Court to obtain an official seal of the Court, a signature of the clerk, and for forwarding to a third-person for service of process.[10] (*Id.*)

9. The Court could consider the second motion to amend as a supplement to the original complaint but declines to do so because supplemental pleadings are permitted only to "set[ ] forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." *See* Fed.R.Civ.P. 15(d). The motion is not merely supplemental to the claims raised in the original complaint, but rather, reiterates many of the claims raised in the original complaint.

10. Plaintiff suspects wrongdoing at the prison related to the mailing of these documents to the Court because he has received no response and because the third-person server never received the summons. (*See* Former Compl.) The Court, however, has the summons and the three stamps provided by plaintiff so as to facilitate forwarding the summons

Upon request from a plaintiff who has paid the filing fee for the action, "the court may direct that service be effected by a United States marshal." Fed.R.Civ.P. 4(c)(2). Nevertheless, pursuant to L.R. 4.2, such a plaintiff must pre-pay "the appropriate fee, and any immediate costs to the marshal." In this case, plaintiff filed the instant action sometime between March 9, 2004, when he signed the complaint, and March 22, 2004, when this Court received it.[11] On May 4, 2004, the Court received the filing fee for this action. However, plaintiff has not shown that he has pre-paid the appropriate fee or costs to the U.S. Marshal in accordance with L.R. 4.2. The Court could deny the request for service by the U.S. Marshal for this reason.

With regard to his motion for extension, plaintiff's responsibility for serving defendants with summons and his complaint includes satisfying the deadline for service of process set forth in Rule 4(m) and "furnish[ing] the person effecting service with the necessary copies of the summons and complaint." Fed.R.Civ.P. 4(c)(1). Rule 4(m) establishes a 120–day time limit for service of process in the absence of a judicially granted extension of time. However, in cases in which the plaintiff pays the filing fee, some courts have held that the 120–day period does not commence until the plaintiff pays the fee. *Robinson v. America's Best Contacts & Eyeglasses*, 876 F.2d 596 (7th Cir.1989); *Ellis v. Principi*, 223 F.R.D. 446, 448 (S.D.Miss.2004); *Scary v. Philadelphia Gas Works*, 202 F.R.D. 148, 151 (E.D.Pa.2001). The Fifth Circuit has not addressed the issue of when the 120–day period commences in cases where the plaintiff pays the filing fee after the date he submitted his complaint to the district court. Under either commencement date, the deadline for service has long since expired. Using March 9, 2004, as the earliest date plaintiff could have filed his original complaint, the deadline for service of process expired in July 2004. If the date of fee payment, May 4, 2004, is used as the date the 120–day period commenced, the deadline expired September 1, 2004.

■ Notwithstanding the expiration of the deadline, Rule 4(m) grants the federal courts discretion to extend the time for service even though the deadline has lapsed. *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir.1996). The rule mandates that the courts "extend the time for service for an appropriate period", if the movant shows good cause. Fed.R.Civ.P. 4(m); *accord Thompson*, 91 F.3d at 21. Additionally, to permit the screening requirements of "28 U.S.C. §§ 1915 and 1915A to operate harmoniously with Fed. R. Civ. Pro. 15(c) and 4(m)," the Court may suspend the time for service until the Court "enters an order directing service of the … complaint." *See Warren v. Ruffcorn*, No. 00–0721–HA, 2001 WL 34043449, at *4 (D.Or. Sept.18, 2001) (citing *Urrutia v. Harrisburg County Police Dept.*, 91 F.3d 451, 459–60 (3rd Cir.1996)). When the Court has not ordered service of process upon completing the preliminary screening mandated by 28 U.S.C. §§ 1915(e) and 1915A(a),[12] the circumstances generally fa-

to the third-party server. Because this case is subject to judicial screening pursuant to 28 U.S.C. § 1915A, the Court placed the summons in an internal file pending resolution of the screening process.

11. Under the prison mailbox rule, an action is deemed filed when the prisoner delivers the pleadings to prison authorities for mailing to the court. *See Cooper v. Brookshire*, 70 F.3d

377, 379 (5th Cir.1995). The record does not precisely reflect when plaintiff gave his original complaint to the prison authorities for mailing.

12. Because plaintiff paid the filing fee for this action, the screening requirements of § 1915(e) are inapplicable to his case. Plaintiff's complaint falls squarely within the parameters of § 1915A(a), however, which

vor extending the time for service of process. In most instances, the screening process itself constitutes good cause to extend the time for service of process.[13] The Court thus suspends the 120–day period for service until the Court completes its mandated screening under 28 U.S.C. § 1915A. Accordingly, the Court denies as unnecessary the motion for process and the motion for extension of time.[14]

## V. PRELIMINARY SCREENING

■ As a prisoner seeking redress from an officer or employee of a governmental entity, plaintiff's complaint is subject to preliminary screening and *sua sponte* dismissal pursuant to 28 U.S.C. § 1915A. *See Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir.1998). Section 1915A "institutes certain screening procedures once a complaint is received by a district court" and "is analogous to the version of 28 U.S.C. § 1915(d) that was in effect before Congress enacted the Prison Litigation Reform Act [ (PLRA) ] of 1995 ... [and] is also quite similar to the roles played by Federal Rules of Civil Procedure 11 and 12(b)(6)." *Id.* at 580 n. 2. Dismissal under § 1915A(b) is mandatory, if the Court finds the complaint or any portion of it meets the § 1915A(b) criteria. *Gladney v. Pendleton Correctional Facility*, 302 F.3d 773, 775 (7th Cir.2002), *cert. denied*, 538 U.S. 910, 123 S.Ct. 1490, 155 L.Ed.2d 233 (2003); *Hines v. Graham*, 320 F.Supp.2d 511, 526 (N.D.Tex.2004).

■ Section 1915A(b) provides for *sua sponte* dismissal if the Court finds the complaint "frivolous or malicious" or if it "fails to state a claim upon which relief may be granted" or seeks monetary damages from a defendant immune from such relief. *See Martin*, 156 F.3d at 579–80. A claim is frivolous, if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is

---

mandates that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." Subparagraph (b) of § 1915A thus mandates that the court "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief."

13. Suspending the time for service pending resolution of the screening process is also consistent with another PLRA provision addressing lawsuits by prisoners, 42 U.S.C. § 1997e(g). Section 1997e(g)(1) permits a defendant to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility" without fear of admitting any allegation of the complaint because the statute precludes relief to plaintiff "unless a reply has been filed." However, pursuant to § 1997e(g)(2), "[t]he court may require any defendant to reply to a complaint brought under this section if it finds that the plaintiff has a reasonable opportunity to prevail on the merits." Viewing § 1997e(g) in conjunction with the screening provisions of § 1915A (and § 1915(e)(2) when applicable), suspension of the time for service of process while the Court determines whether the action has sufficient merit to proceed appears to best satisfy the various PLRA provisions.

14. The Court notes that while plaintiff has shown several steps to serve process on defendants Franklin, Vance, Bowles, and Dretke and one attempt to serve defendant Navarro, nothing before the Court exhibits any effort to serve the remaining defendants. As demonstrated *infra*, plaintiff's claims fail to escape the judicial screening of 28 U.S.C. § 1915A, and thus entitle him to no relief against any defendant. Consequently, while the Court could dismiss some defendants without prejudice for the failure of plaintiff to timely serve them, such dismissal appears unnecessary at this juncture.

"based on an indisputably meritless legal theory." *Id.* at 327, 109 S.Ct. 1827. A claim that falls under the rule announced in *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994) "is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question." *Hamilton v. Lyons,* 74 F.3d 99, 102 (5th Cir.1996). A complaint fails to state a claim upon which relief may be granted when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Smith v. Winter,* 782 F.2d 508, 511–12 (5th Cir.1986); *Henrise v. Horvath,* 94 F.Supp.2d 768, 769 (N.D.Tex.2000). In addition, when a claim is barred by the applicable statute of limitations, the Court properly dismisses such claim under § 1915A. *Gonzales v. Wyatt,* 157 F.3d 1016, 1019–21 (5th Cir.1998).

## VI. REQUEST FOR RELEASE FROM CONFINEMENT

■ Plaintiff seeks declaratory and injunctive relief in this action, including release from his confinement. Release from imprisonment, however, is an inappropriate remedy in an action brought pursuant to 42 U.S.C. § 1983. *See Wolff v. McDonnell,* 418 U.S. 539, 554, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Accordingly, this claim for relief does not survive summary dismissal. If plaintiff is entitled to any relief in this action, he is entitled only to declaratory relief. Furthermore, because plaintiff has pursued prior habeas actions, and because he specifically filed this action pursuant to § 1983, the Court declines to construe this action as a petition for a writ of habeas corpus.

## VII. DUPLICATIVE OR MALICIOUS LITIGATION

As previously noted, this Court has dismissed a previous IFP action by plaintiff against many of the same defendants that he now seeks to sue. *See Shabazz v. Franklin,* No. 3:93–CV–0648–G (N.D.Tex. 1993), hereinafter referred to as *Shabazz I.* In addition, the Southern District of Texas has dismissed previous challenges to disciplinary proceedings based upon alleged false disciplinary charges. *See Shabazz v. Collins,* No. 4:95–CV–0022 (S.D.Tex.) (Order of Partial Dismissal dated May 22, 1995, which dismissed claims against Gary Johnson and other TDCJ employees); *Shabazz v. Harris,* No. 4:95–CV–3145 (S.D.Tex.) (Order of Partial Dismissal dated Dec. 21, 1995). Furthermore, the Eastern District of Texas has dismissed a fee-paid action against Gary Johnson which alleged that plaintiff had been unconstitutionally kept in administrative segregation since July 1991. *See Shabazz v. Johnson,* No. 5:01–CV–0070 (E.D.Tex.2001) (Order and Judgment), *aff'd on other grounds,* No. 02–41060, 64 Fed.Appx. 417, 2003 WL 1524652, *1 (5th Cir. Mar. 17, 2003) (affirming dismissal because the complaint did "not support an arguable constitutional violation"), hereinafter *Shabazz II.*

*Shabazz I* stemmed from the same set of facts and occurrences that form the basis for plaintiff's current conspiracy claims. *Shabazz II* (and the Southern District cases to some extent) stem from many of the same facts and occurrences that form the basis for plaintiff's current disciplinary claims. Although plaintiff now names other defendants in this action, *Shabazz I* and this action share six defendants, and plaintiff sought to add a seventh, Bill Long or his successor, as a defendant in this action. *Shabazz II* and this action share Gary Johnson as a defendant, and plaintiff has now named Johnson's successor as a de-

fendant. Because plaintiff has already "unsuccessfully litigated" a previous conspiracy action against six of the named defendants in this action and a previous action related to being kept in administrative segregation since 1991, the Court must consider whether the current action may be properly dismissed as frivolous or malicious due to its duplicative nature.

■■■ It is well-accepted that courts may appropriately dismiss an IFP action as frivolous, when the action "seek[s] to relitigate claims which allege substantially the same facts arising from a common series of events which have already been unsuccessfully litigated by the IFP plaintiff." *Wilson v. Lynaugh,* 878 F.2d 846, 850 (5th Cir.1989). In this case, however, plaintiff does not proceed IFP. Because he was barred by the three-strikes provision of the PLRA, he could not proceed with this action until he paid the full filing fee. Such payment thus invokes consideration of *Denton v. Hernandez,* 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), in which the Supreme Court distinguished *in forma pauperis* cases from fee-paid cases:

> Because a § 1915(d) dismissal is not a dismissal on the merits, but rather an exercise of the court's discretion under the *in forma pauperis* statute, the dismissal does not prejudice the filing of a paid complaint making the same allegations. It could, however, have a res judicata effect on frivolousness determinations for future *in forma pauperis* petitions.

*Id.* at 34, 112 S.Ct. 1728. Thus, under *Denton,* the Court may not summarily dismiss a fee-paid case merely because it duplicates a prior case dismissed during the IFP screening process.

Like *Denton,* the Fifth Circuit has recognized the difference between fee-paid and IFP cases. *See Marts v. Hines,* 117 F.3d 1504, 1505 (5th Cir.1997) (*en banc*). The Fifth Circuit granted *en banc* consid-

eration in *Marts* specifically "to continue [its] development of procedures to address and dispose appropriately of a continually burgeoning prisoner pro se docket, both at the trial and appellate levels, and to note an appropriate awareness of the intervening Prison Litigation Reform Act of 1995." *Id.* at 1504 (footnote omitted). "[S]imply stated," it sought to

> implement procedures which will aid in the separation of the wheat from the chaff in such filings as early in the judicial process as is possible, in an effort to ensure that judicial resources will not be wasted and that the meritorious claims may receive the timely attention and disposition warranted.

*Id.* at 1505.

As part of these procedures, the Fifth Circuit identified instances when the dismissal of an IFP complaint may prejudice a later-filed, fee-paid action. *See id.* These instances include: (1) "complaints containing claims which, on their face, were subject to an obvious meritorious defense"; (2) when the plaintiff had been "given an opportunity to expound on the factual allegations" through a questionnaire or hearing and still "could not assert a claim with an arguable factual basis"; and (3) "claims without an arguable basis in law." *Id.* at 1505 (footnotes omitted). The *Marts* court further found "that dismissals as frivolous or malicious" under the IFP screening statute "should be deemed to be dismissals with prejudice unless the district court specifically dismisses without prejudice." *Id.* at 1506. The Fifth Circuit subsequently clarified *Marts* as standing for the proposition "that when federal courts finally adjudicate *in forma pauperis* litigation their judgments may protect the courts from an onslaught of malicious and frivolous complaints, where the defendants have neither been served with process nor ever appeared in

the case." *United States v. Coscarelli,* 149 F.3d 342, 343 (5th Cir.1998). However, it has not further considered how the PLRA affects screening procedures for fee-paid, prisoner cases. This Court thus considers the impact of the PLRA amendments to the procedures developed in *Marts.*

Because § 1915(d) did not adequately curb litigation abuse by inmates, Congress amended § 1915 in several material respects when it enacted the PLRA. *See Walp v. Scott,* 115 F.3d 308, 308–09 & n. 1 (5th Cir.1997). The PLRA also added 28 U.S.C. § 1915A and 42 U.S.C. § 1997e as new judicial screening tools to stem the flow of meritless prisoner litigation. The PLRA

> contains provisions that should discourage prisoners from filing claims that are unlikely to succeed. Among the many new changes relating to civil suits, the statute requires all inmates to pay filing fees; denies in forma pauperis status to prisoners with three or more prior "strikes" (dismissals because a filing is frivolous, malicious, or fails to state a claim upon which relief may be granted) unless the prisoner is "under imminent danger of serious physical injury"; bars suits for mental or emotional injury unless there is a prior showing of physical injury; limits attorney's fees; directs district courts to screen prisoners' complaints before docketing and authorizes the court on its own motion to dismiss "frivolous," "malicious," or meritless actions; permits the revocation of good time credits for federal prisoners who file malicious or false claims; and encourages hearings by telecommunication or in prison facilities to make it unnecessary for inmate plaintiffs to leave prison for pretrial proceedings.

*Crawford–El v. Britton,* 523 U.S. 574, 596–97, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998) (citations omitted).

Like the amended IFP screening statute, § 1915(e), § 1915A provides for preliminary screening of cases. Both statutes provide for summary dismissal on grounds of frivolousness, maliciousness, immunity, and failures to state a claim. Although identical in some respects, the two statutes also differ. Section 1915(e) applies only to cases that proceed without the prepayment of the filing fee, *i.e.,* IFP cases. Section 1915A, on the other hand, applies to all prisoner suits in which the prisoner seeks "redress from a governmental entity or officer or employee of a governmental entity," whether or not the prisoner seeks to proceed IFP. The enactment of the PLRA exhibits a clear Congressional intent to curb abusive prisoner litigation. With "appropriate awareness" of the PLRA, the Fifth Circuit developed screening procedures to likewise combat such abuse. *See Marts,* 117 F.3d at 1504–06. The *Marts* procedures appear entirely consistent with the statutory amendments of the PLRA and the Congressional intent behind such amendments, and thus continue to guide the courts in the judicial screening process.

■ In summary, courts may not dismiss a a later-filed, fee-paid action merely because of a prior unsuccessful IFP action. *See Denton,* 504 U.S. at 34, 112 S.Ct. 1728. However, a previously dismissed action based on substantially the same facts arising from a common series of events provides a sufficient basis to dismiss the later-filed, fee-paid action when the court dismissed the first action because it was subject to a meritorious defense or was found factually or legally frivolous, after giving the plaintiff the opportunity to expound on the factual allegations before a dismissal as factually frivolous. *See Marts,* 117 F.3d at 1504–06. Furthermore, in view of *Marts* and the PLRA amendments, a dismissal for failure to state a claim upon

which relief may be granted also appears sufficient when the plaintiff had been given an opportunity to expound on his or her claims before the court dismissed the earlier-filed action.

With these principles in mind, the Court proceeds to address plaintiff's claims in light of the previous dismissals in *Shabazz I* and *Shabazz II*.

## VIII. DISCIPLINARY CLAIMS

Plaintiff alleges that Gary Johnson has kept him in administrative segregation since July 1991 without legal representation or adequate access to legal materials. Plaintiff's current complaint against Johnson and his successor, Douglas Dretke, essentially duplicates the allegations he raised in *Shabazz II* in the Eastern District of Texas. The Eastern District dismissed plaintiff's fee-paid action with prejudice, and the Fifth Circuit Court of Appeals affirmed the dismissal because the complaint did "not support an arguable constitutional violation." *Shabazz v. Johnson*, No. 02–41060, 64 Fed.Appx. 417, 2003 WL 1524652, *1 (5th Cir. Mar. 17, 2003).

▮ Plaintiff's current complaint adds further allegations of unlawful disciplinary practices that have kept him in administrative segregation since the complaint filed in *Shabazz II*. Plaintiff alleges no intervening change in law that permits such duplicate litigation, but instead alleges new facts related to his housing in administrative segregation. However, "[i]n order for new facts to constitute a new cause of action and thus allow a claim to be relitigated, those facts must be both 'significant' and create 'new legal conditions'."[15] *Wil-*

son v. Lynaugh, 878 F.2d 846, 851 (5th Cir.1989) (quoting *Hernandez v. City of Lafayette*, 699 F.2d 734, 737 (5th Cir. 1983)). Plaintiff appears to simply reiterate his assertions from *Shabazz II* while claiming that the TDCJ defendants are continuing to keep him in administrative segregation on false pretenses. Plaintiff has shown no significant new facts which created a new legal condition related to his housing in administrative segregation from July 1991 through his complaint filed in *Shabazz II*. Consequently, plaintiff may not re-litigate his disciplinary claims that were or could have been raised in *Shabazz II*.

▮ Plaintiff also alleges disciplinary claims related to his housing in administrative segregation since he filed *Shabazz II*. However, "'absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim' because it 'simply does not constitute a deprivation of a constitutionally cognizable liberty interest.'" *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir.1998) (quoting *Pichardo v. Kinker*, 73 F.3d 612 (5th Cir.1996)). Because plaintiff complains about prison conditions that are far from extraordinary, he has not alleged a constitutional violation. Consequently, his claims regarding administrative segregation entitle him to no relief in this action.

## IX. CONSPIRACY CLAIMS

Plaintiff alleges that his former defense attorney conspired to violate his civil rights by rendering ineffective assistance

---

15. Although not addressed by *Marts*, an intervening change in the law or modification of significant facts that create new legal conditions may prevent the dismissal of an earlier-filed action from prejudicing the plaintiff in a later-filed action. *See Wilson v. Lynaugh*, 878

F.2d 846, 850 (5th Cir.1989) (recognizing such exception to res judicata). Such exception appears equally applicable whether or not the plaintiff proceeds IFP and is consistent with *Denton*, *Marts*, and the PLRA amendments.

of counsel during his 1991 state trial for attempted murder. (Compl. at 2, Attached Pages at 5, 8–9.) He further alleges that the State defendants conspired to violate his civil rights by presenting false testimony, suppressing favorable evidence, and in general depriving him of a fair trial. (Compl. at 2; Attached Pages at 1–4–9.) In addition, the TDCJ defendants allegedly conspired to continue the conspiracy and prevent its undoing by keeping plaintiff in isolated housing since July 1991 without legal representation. (Compl. at 2; Attached Pages at 1–3, 7–8, 14.)

Plaintiff raised similar, if not identical, claims in *Shabazz I*. In *Shabazz I*, the Court found plaintiff's claims related to the alleged conspiracy which resulted in his conviction for attempted murder untimely. It found Judge Hampton immune from suit. It thus dismissed the action as frivolous during IFP screening. Although the Court did not specifically dismiss the action without prejudice, such dismissal is now deemed to be with prejudice. *See Marts v. Hines*, 117 F.3d 1504, 1506 (5th Cir.1997). Plaintiff's conspiracy claims appear subject to an obvious meritorious defense—statute of limitations. Such claims thus do not appear to fall within the non-prejudice purview of *Denton* even though plaintiff has paid the fee so that he may proceed with this case. *See Marts*, 117 F.3d at 1505.

 Plaintiff argues that the Court in *Shabazz I* did not adjudicate his claims because his conviction had not been overturned. Contrary to plaintiff's position, the Court did adjudicate his claims. When the Court dismissed his claims in 1993, the validity of plaintiff's conviction was immaterial to the limitations question. Not until the Supreme Court decided *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), did the validity of plaintiff's conviction become material to

the issue of limitations. In *Heck*, the Supreme Court ruled that,

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

512 U.S. at 486–87, 114 S.Ct. 2364 (footnote omitted). Under *Heck*, courts must consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 486–87, 114 S.Ct. 2364. The courts have extended the holding in *Heck* to claims seeking declaratory and injunctive relief as well as damages. *See Edwards v. Balisok*, 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997); *Clarke v. Stalder*, 154 F.3d 186, 190–91 (5th Cir.1998). Under *Heck*, a federal claim "does not even arise until his conviction has been invalidated." *Thomas v. Esquivel*, 959 F.Supp. 396, 398 (N.D.Tex. 1997) (citing *Stephenson v. Reno*, 28 F.3d 26, 27–28 (5th Cir.1994)).

 Because *Heck* affects when a claim accrues for purposes of limitations, the Court may not blindly follow *Shabazz I* to find plaintiff's conspiracy claims untimely. An intervening change in law that creates new legal conditions may prevent

a previous dismissal from prejudicing plaintiffs in their pursuit of claims that duplicate the previously dismissed action. *See Wilson v. Lynaugh,* 878 F.2d 846, 850 (5th Cir.1989). Although *Heck* may constitute an intervening change in law between the dismissal of plaintiff's earlier conspiracy action and the instant action, the Court finds that *Heck* creates no new legal condition of any significance until plaintiff's attempted murder conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. Plaintiff remains incarcerated for attempted murder. Until that conviction is overturned, plaintiff's conspiracy claims are either barred by the statute of limitations, as previously found, or are barred by *Heck.* In either case, the conspiracy claims should be dismissed as frivolous. *See Gonzales v. Wyatt,* 157 F.3d 1016, 1019–21 (5th Cir.1998) (limitations); *Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir. 1996) (claims that fall under the rule of *Heck* are "legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated or otherwise called into question").

To the extent *Heck* would apply to the conspiracy claims, the Court should dismiss such claims "with prejudice to their being asserted again until the *Heck* conditions are met." *Johnson v. McElveen,* 101 F.3d 423, 424 (5th Cir.1996); *accord Boyd v. Biggers,* 31 F.3d 279, 283–84 (5th Cir. 1994) (upholding dismissal with prejudice); *Stephenson v. Reno,* 28 F.3d 26, 27–28 (5th Cir.1994) (same), *but see, Clarke v. Stalder,* 154 F.3d 186, 190–91 (5th Cir.1998) (dismissing claims for injunctive relief without prejudice). Furthermore, a dismissal based upon legal frivolity should be with prejudice. *See Marts v. Hines,* 117 F.3d 1504, 1506 (5th Cir.1997). To the extent *Heck* does not apply to plaintiff's conspiracy claims, the Court should dismiss such claims with prejudice as untimely.

## X. RECOMMENDATION

For the foregoing reasons, it is recommended that the District Court summarily DISMISS this action with prejudice pursuant to 28 U.S.C. § 1915A(b).[16] Such dismissal will count as a "strike" or "prior occasion" within the meaning 28 U.S.C. § 1915(g).

March 8, 2005.

---

**16.** The Court notes that had the Court granted either of the two amendments, the result of this action would have been the same. Neither proposed amendment added any significantly different claims. In addition, no amendment to plaintiff's existing claims will cure the enumerated deficiencies such that the claims survive summary dismissal.